*387
 
 Kinkade, J.
 

 This is an action in mandamus, heard on motion of relator to strike certain allegations from the answer. The issues arise by refusal of defendant to appoint relator as a member of the board of deputy state supervisors of elections in Jefferson county. A vacancy in the board exists by reason of the recent removal by defendant, under authority conferred upon him by (Section 4810, General G'ode, as amended (110 Ohio Laws, 24), of one of the members of the board for misconduct in office. Pursuant to provisions of Sections 4803, 4804, 4805, 4806 and 4807, General Code, the proper political committee of the county, within the proper time and in the proper form, duly recommended to defendant the appointment of relator to fill the vacancy. The defendant, on the sole ground that the relator was not a suitable person to appoint, refused the appointment, stating to the committee and to the relator the grounds of refusal which are set up in the answer; that is to say, that the relator had aided, advised, induced, and procured the removed member of the board to do the illegal acts which caused the removal, and consequently relator must be considered as a principal in the doing of those things, and that this conduct of the relator disqualified him for the appointment. The relator thereupon began this action, and now moves the court to strike from the answer allegations which relator contends do not constitute a defense.
 

 The only qualification of members of the board of deputy state supervisors mentioned in Section 4803, General Code, is that the members of the board must be “qualified electors.” Sections 4805, 4806, and 4807 provide that when the political
 
 *388
 
 .executive committee recommends “qualified persons,” these persons, must be appointed.
 

 The petition alleges that the relator is a qualified elector of the county, and further states that he is qualified in every other way to fill the office. The relator contends that it is not necessary to alleg’e anything further than that the relator is a qualified elector of the county, and that he has been duly recommended by the committee as such, and insists that upon this recommendation alone being filed with the state supervisor of elections the mandatory duty upon the state supervisor forthwith arises to make the appointment in accord with the recommendation.
 

 The defendant takes square issue with this proposition, and insists that the truth or falsity of any or all of the allegations of fact contained in such recommendation may be inquired into by' the state supervisor of elections, and that if and when such statements contained in the recommendation are found to be untrue, in any essential respect, the appointment may be withheld until all the requirements of the law have been complied with by the committee, and that one requirement of the law is that “qualified persons” must be recommended, and that this language, “qualified persons,” means that the nominee must be qualified to fill the office, in addition to being a qualified elector of the county.
 

 The positions of the relator and defendant have been very frankly and very definitely stated both in oral argument and in briefs filed.
 

 Counsel on each side have called our attention to two decisions of this court:
 
 State ex rel.
 
 v.
 
 Fing
 
 
 *389
 

 er, 48
 
 Ohio St., 505, 28 N. E., 135, and
 
 State ex rel. Culbert
 
 v.
 
 Kinney, Secretary of State,
 
 63 Ohio St., 304, 58 N. E., 809. In neither of these decisions is the exact question raised or decided that is presented here.
 

 At the time of the decision in the
 
 Finger case,
 
 the deputy board of state supervisors was appointed by the probate judge. Without waiting for the recommendation of the political committee, the probate judge, of his own motion, appointed the members of the board, and then on the coming in of the recommendation of the committee refused to appoint the parties recommended for the reason that the board had already been filled. This court held that the action of the probate judge in making the appointments was premature, inoperative, and void, and ordered him to appoint the parties named in the recommendation of the committee. No question was raised as to the qualification of the men recommended by the committee.
 

 In the
 
 Kinney case
 
 the appointment recommended by the committee was refused on the ground that the action of the committee was irregular, in this, that it was not taken at a regular meeting at which all of the members of the committee were present. The state supervisor insisted that all he had was the individual recommendation of the members of the committee. The court held that, inasmuch as all members of the committee had joined in the recommendation, it was quite immaterial whether it was done at a committee meeting or not, and ordered the writ to issue commanding the appointment in accord with the recommendation of the committee. No question was
 
 *390
 
 raised as to the qualification of the party recommended.
 

 Judge Williams, who delivered the opinion of the court in the
 
 Kinney case,
 
 uses the following language at page 316:
 

 “The statute contains the further provision that, ‘if the executive committees of the two political parties in the county casting the highest and the next highest number of votes in this state at the last preceding November election, recommend qualified persons to the state supervisor at least ten days before the appointment is made, then the state supervisor shall appoint the persons so recommended * * V
 

 “These statutory provisions are mandatory * * * requiring him [state supervisor] to appoint the person recommended by the county executive committee of such party, when he possesses the necessary qualifications # * *. He is called upon to decide in the first instance whether the person recommended is qualified and the recommendation is made by the proper committee within the proper time. But his decision when contrary to the fact, in either respect, is open to correction by the courts. * * * It is not doubted that the relator, when his recommendation was filed with the defendant, was, and still is, a citizen and elector of Sandusky county, lacking no qualification necessary to entitle him to receive the appointment of deputy state supervisor of elections for that county; nor that his recommendation is the genuine instrument which it purports to be, and was filed within the time required by law.”
 

 Sections 4806 and 4807, General Code, provide
 
 *391
 
 for filling vacancies in the board, and carry the same provisions with respect to the recommendation of the committee; that is to say, in order to control the appointment the committee must recommend qualified persons to the state supervisor.
 

 It would be difficult indeed to imagine a case that would present in stronger form than does the instant case the duty of the state supervisor to exercise a sound discretion in the filling of this vacancy. One member of the board had recently been removed by the state supervisor for misconduct in office while a member of the board. The relator in this case had aided, abetted, advised, induced, and procured the removed member of the board to do the things which caused the removal of this member by the state supervisor. This was known to the state supervisor, and the refusal to appoint was based on that ground. The action of the removed member embraced the destruction of certain absent voters ’ ballots, and such destruction was, as contended by the defendant, clearly in violation of the provisions of the statute.
 

 If the intention of the Legislature, in providing for the board of deputy state supervisors and their appointment on the recommendation of the political executive committee, was to confer full, complete, and unconditional authority upon the executive committee to determine the parties who should be appointed to those important positions, without the exercise of any discretion at all in reference thereto on the part of the secretary of state, as the state supervisor of elections, it is difficult indeed to understand what useful purpose was served by having the secretary of state merely record
 
 *392
 
 the result by issuing a certificate of appointment in accord with the recommendations of the committee. It would have simplified the situation to have left the entire matter with the committee to make its own selections; and, furthermore, if the committee were to be the sole judges with reference to qualifications of the parties to be selected, it is difficult to understand why the committee was not given the power to remove the appointees when they failed in the opinion of the committee to discharge the duties of the office according to law. It seems, however, that the entire authority to remove, and to remove summarily, was vested in the state supervisor, according to the provisions of IS'ection 4810, General Code, as amended.
 

 The majority of the court are of opinion that the Legislature intended to clothe the secretary of state with authority to inquire into the truth or falsity of the statements made by the executive committee in its recommendation for appointment, to the end that the facts might be definitely determined in that respect. Surely the Legislature did not intend to substitute the opinion of the state supervisor of elections in place of the opinion of the executive committee, and thereby permit the •secretary of state to arbitrarily overrule the action of the committee in that respect and appoint other persons of his own choice. But because the Legislature did not give the secretary of state as wide authority as this, it by no means follows that he, as the supervisor of elections, shall not exercise any discretion with respect to the qualifications of the men nominated by the committee. And when the state supervisor of elections, acting in entire good faith, believes the party nominated by the
 
 *393
 
 committee to be clearly disqualified for holding the office, and has good grounds on which to found such belief, we think it is his duty to withhold .the appointment until such time as the question of the qualification of the nominee can be presented on evidence in court and there definitely settled.
 

 The office of deputy state supervisor of elections is a very important office. The members of that board select the judges and clerks of election that receive, count, and tabulate the votes cast, and it is of the highest importance to all that persons shall be selected for these important duties who are possessed of the highest integrity and are accustomed to act in accordance therewith. Surely no one has less authority to violate the law with reference to the conduct of elections than the election officers themselves, no matter whether it be the state supervisor of elections, the deputy supervisors of elections, or the judges or clerks of elections. It surely would not be in accord with the language used by Judge Williams, above quoted, for a state supervisor of elections to dose his eyes to evidence in front of him that a nominee of the committee was disqualified, and appoint him without regard to this evidence. We think such action would be a clear violation of duty on the part of the state supervisor. The issue is clearly made by the motion to strike out the allegations in the answer. We think these allegations state a defense, and, if supported by evidence clear and convincing, will justify a denial of the writ prayed for by the relator.
 

 Motion overruled...
 

 Marshall, C. J., Day and Allen, JJ., concur.