Kinkade, J.
 

 This is an action in mandamus begun in this court, in which relator prays for a writ commanding respondent to appoint relator a member of the board of deputy state supervisors of elections in Jefferson county, to fill an existing vacancy on that board.
 

 The relator was duly nominated and certified to respondent for such appointment by the proper political committee. Respondent refused to make the appointment, stating as a reason for such refusal that relator was disqualified to hold such
 
 *3
 
 office; thereupon relator filed his petition in this action. Respondent by answer alleged that the vacancy in the board had been caused shortly prior thereto by the summary removal, by order of respondent, of one of the members of the board for misconduct in office, and that such misconduct in office of the removed member had been advised, encouraged, induced, and actively participated in by the relator. Motion was made by relator to strike from the answer all allegations of this character, on the ground that they did not state a valid defense.
 

 At the hearing of this motion counsel for relator contended that, the recommendation of the proper political committee being in proper form, respondent was wholly without power or authority to look back of or beyond the duly certified recommendation of the committee, and by such further examination determine whether relator was in fact qualified for such appointment.
 

 This court, in an opinion rendered
 
 (State, ex rel. Nolan,
 
 v.
 
 Brown,
 
 113 Ohio St., 386, 149 N. E., 192), held that the certificate of the committee, in due form, as required by law, was sufficient to establish the qualification of the relator in the absence of evidence, clear and convincing, produced by the respondent, showing disqualification. We held that it was the right, and the duty as well, of respondent to exercise a sound discretion in the matter of the qualification of one seeking an appointment to an office so important in character. The motion to strike from the answer was overruled and time given to bring in evidence on the merits. The evidence has been
 
 *4
 
 taken by depositions duly filed. Additional briefs have been filed, and the case has been fully argued orally. The court lias read all of the depositions and all of the briefs. The relator’s deposition is very full and covers the whole field. It embraces some of the testimony which he gave when testifying at the hearing held by the order of respondent, prior to removing the member of the board whose removal caused the vacancy. The deposition of the relator in the present hearing contains many statements plainly indicative of a strong desire on his part to impress this court that all he did in reference to advice given to the removed member of the board with respect to the transactions which induced the respondent to issue such order of removal was purely professional in character, and was, in fact, simply the usual conduct of a lawyer advising a client, who had been a client for a number of years, and who had called again for further advice.
 

 Counsel for the relator stressed this feature of the case when arguing the entire good faith of the relator in all that he did. We cannot so read the evidence of relator. This case might easily and properly be disposed of on the testimony of the relator alone. That testimony shows that he was a man who had interested himself, and properly so no doubt, for a number of years in political matters. (This fact is not mentioned in criticism.) He served parts of two terms as a member of the board of deputy state supervisors of elections, and held other positions political in character. It liad long been his practice to go to the office of the board of elections shortly prior to an approach
 
 *5
 
 ing primary, or general election, and there check up on absent voters’ ballots that had been filed, in order to keep fully informed on that subject. He knew how those matters were there handled, how and where such ballots were kept, when they would be sent to the election officers in the proper precincts, what records were kept concerning the same, and, in short, everything that related to absent voters’ ballots.
 

 The misconduct of the member of the board who was removed was the burning of about a dozen absent voters’ ballots, then in possession of the board, a few days prior to the approaching primary. Relator pursuant to his practice called at the office of the board and discovered there these absent voters’ ballots. No one else was there present but a clerk. These 11 ballots were locked in a ballot box set apart for that purpose, to be kept there subject to the action of the board with respect thereto prior to sending the ballots to precinct judges immediately before the day of the primary. Relator says he discovered sufficient irregularities in connection with the applications for these ballots, and the voting of the same, to satisfy him that they were each and all illegal and void; that in fact they were, .there as a result of a conspiracy on the part of several persons who were attempting “to stuff the ballot box,” and thus commit a fraud in the primary election about to be held. Relator thereupon telephoned to the home of the chief deputy of the board, but learned that he was out of the city. He was told the chief deputy was expected home that evening. Relator then telephoned the member who was
 
 *6
 
 later removed and requested her to come to the office of the hoard, which she did, as did also the clerk of the board and two or three others in no way connected with the board. The relator and the one member of the board present held several conferences, not in the hearing of. the others present, and then, after a general discussion, in the hearing of all, the board member directed the clerk to open the ballot box containing the 11 absent voters’ ballots, which was done, and the ballots were handed to the member of the board present. Two other members of the board were also absent from the city. The member present took the ballots out of the sealed envelopes, crumpled them up in her hands, and threw them into a cuspidor. She then said she thought the proper method of destroying them' was by burning them. She asked the relator for a match, which he produced, and, as he says, out of courtesy to the board member he applied the lighted match to the bunch of crumpled ballots, and they were all burned.
 

 Much time was spent in taking the' depositions to develop and establish the facts tending to show that the burned ballots were not valid or legal ballots by reason of omissions and irregularities connected with their issue and the voting of the same, and the deposit thereof with the board, and also tending to show that the alleged absent voters, or at least a majority of them, had no intention of being absent on the day of the primary, and that in fact several of them were at home on the day of the primary, and some actually voted at the primary. There is no attempted explanation of
 
 *7
 
 any necessity for burning these ballots on the day they were in fact burned. The evidence of relator establishes beyond a doubt that it was his desire and intention to get those ballots destroyed that day. It is clearly manifest by the evidence that if he had not been there and stayed there these ballots would not have been burned at that time. When asked why he urged that the sole member of the board present should forthwith destroy the ballots, he said:
 

 “I told her if I were her for my own protection, the fact that the other members of the board were out of the city, that I would destroy the ballots.”
 

 He was then asked, “Just how did you feel that was going to protect her?” And his answer was:
 

 “Simply because I knew from my investigation that those ballots were fraudulently voted; that, even if the ballots were voted' after an application had been made, and even if those women intended to go, they still were not legal ballots on the face of them. ’ ’
 

 The relator is a lawyer and a man of experience in business affairs. We cannot assume that he thought he was answering the question that had been asked him by the answer which he gave. The fact is it is not an answer at all, but merely an evasion. The question and the answer as quoted are not cited as of substantial importance, if standing alone. The answer is a fair sample, however, of the character of the whole examination of the relator in his deposition. His testimony as a whole indicates very plainly that he now realizes that he went much farther than he should have gone to induce the destruction of the ballots when only
 
 *8
 
 one member of the board was present. He makes rather a feeble attempt to justify the course pursued by stating that when a member of the board he had known of at least one other instance in which a single member of the board, in the absence of the other three members of the board, had taken the responsibility of destroying absent voters’ ballots which the member present had determined were illegal by reason of some omission or irregularity in the proceeding relating to the same, and it becomes entirely evident from an examination of the relator’s testimony that if he were a member of the board he would consider himself as fully authorized, even in the absence of the other three members of the board, and without their knowledge and consent, to pass upon the legality of absent voters’ ballots in the “possession of the board, and even to proceed to destroy the same if he determined that they were illegal on any ground.
 

 Surely it needs no argument to establish the fact that one member of a board of four may not assume, in important matters, to act for the four when the other three are absent. The mere statement of such a proposition furnishes the proper answer to it. The contention is simply absurd from every possible view-point, and particularly so when no necessity is shown for the action at the particular time in question.
 

 The relator called several reputable witnesses, who testified that they had known relator for a number of years and that his general reputation as a law-abiding citizen was good. None of these witnesses was cross-examined by counsel for the re
 
 *9
 
 spondent and no evidence was offered to the contrary by the respondent. These witnesses evidently stated the truth in their depositions, and this court has no doubt that the general reputation of the relator as a law-abiding citizen in the community in which he lives is precisely as described by these character witnesses. If relator were denying the acts that he is charged with in this case, his denial might be very strongly supported by the character evidence mentioned, but the difficulty with the situation is the relator frankly admits all of the acts in respect to which the respondent found him disqualified to hold the office, and the only explanation that he gives is that he was acting in good faith and felt that he had a right to do that which he did.
 

 If we accept the explanation that he was acting in good faith and believed his conduct was entirely appropriate, then we would be driven to the conclusion that he is a very poor judge of what is appropriate conduct on the part of one member of a board of four; and even if we credit the relator with good faith and an honest belief that he was authorized to do the things he did, it does not advantage his situation any so far as this court is able to see. Having made the admissions that he did make in the hearing with respect to the conduct of the removed member, which included a statement that he assumed full responsibility for the destruction of those absent voters’ ballots, we think the respondent was amply justified in refusing to appoint the relator.
 

 It does not appear that any attempt was made by the relator, counsel for the removed member,
 
 *10
 
 or by any one else to induce the respondent to reconsider the removal order he had made. In fact, the recommendation of the relator, who was then the chairman of the executive committee which recommended him for appointment, was made to respondent on the same day that the removed member received, by telegram, the order of removal from respondent. It would be difficult indeed to state a case that would more certainly call for an examination on the part of the respondent as to the qualifications of one seeking to be appointed a member of the board of deputy state supervisors of elections than does this case. We deem it quite unnecessary to discuss, much less to decide, the legality of the burned ballots. All questions pertaining to these ballots were for the decision of the board of deputy state supervisors of elections, and we assume that if they had not been summarily destroyed, in great haste, as they were, whatever was proper to be done with respect to them would have been done in due time by the board, had an opportunity then been given the board so to act. We are not able to appreciate any merit at all in the action of the relator in urging the immediate destruction of these ballots. A majority of the court are of the opinion that the evidence in this case clearly and convincingly sustains the action of the respondent in refusing to appoint the relator, and therefore the writ of mandamus will be denied.
 

 Writ denied.
 

 Marshall, C. J., Day, Allen and Robinson, JJ., concur.