THE STATE, EX REL. DEMOCRATIC EXECUTIVE COMMITTEE OF LUCAS COUNTY, *v.* BROWN, SECRETARY OF STATE.
THE STATE, EX REL. DEMOCRATIC EXECUTIVE COMMITTEE OF COLUMBIANA COUNTY, *v.* BROWN, SECRETARY OF STATE.

[Cite as State, ex rel. Democratic Executive Committee, v. Brown (1974), 39 Ohio St. 2d 157.]

(Nos. 74-145 and 74-147—Decided July 17, 1974.)

*Mr. William J. Kraus*, for relators.

*Mr. William J. Brown*, attorney general, and *Mr. Thomas V. Martin*, for respondent.

*Per Curiam.* R. C. 3501.07 reads as follows:

"At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections, or within fifteen days after a vacancy occurs in the board, the county executive committee of the major political party entitled to the appointment may make and file a recommendation with the Secretary of State for the appointment of a qualified elector. The Secretary of State shall appoint such elector, unless he has reason to believe that the elector would not be a competent member of such board. In such cases, the Secretary of State shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the Supreme Court to compel the Secretary of State to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation. If no such recommendation is made, the Secretary of State shall make the appointment."

Citing the Fourteenth Amendment to the United States Constitution and Section 38 of Article II of the Ohio Constitution, relators argue that R. C. 3501.07 cannot vest sole and arbitrary discretion in the Secretary of State to determine competency of recommended members of the board of elections without also providing procedural guarantees of due process. We disagree.

In two recent decisions, *Board of Regents of State Colleges* v. *Roth* (1972), 408 U. S. 564, and *Perry* v. *Sindermann* (1972), 408 U. S. 593, the United States Supreme Court set forth standards for determining when a public employee's right to reemployment is protected by the Fourteenth Amendment's guarantees of due process.

In *Roth*, the court determined that the Fourteenth Amendment guarantees protected a public employee's interest in liberty and property. The court held that a nontenured professor at a state university was not entitled

to notice and a hearing under the Fourteenth Amendment because:

(1) No stigma or disability attached to the failure to rehire which would foreclose the professor's liberty to seek other employment, and;

(2) The professor's contract of employment was limited to a period of one year, after the expiration of which, no contract or property right existed which was entitled to Fourteenth Amendment protection.

The court did state that, where there was admittedly no right to employment, the government could not, however, make a determination not to rehire for a constitutionally impermissible reason.

More importantly to the case at bar, Chief Justice Burger, in his concurring opinions in both *Roth* and *Sindermann*, stated that only when a right to reemployment under state law exists, arising from an express or implied contract, will the Fourteenth Amendment protect that right.

In the present case, no statutory right to appointment exists under R. C. 3501.07 prior to approval by the Secretary of State. We see no stigma or disability attaching to the exercise of statutory discretion by the Secretary of State in failing to appoint the recommended electors' which would foreclose their seeking any other elective or appointive position.

Additionally, R. C. 3501.07 does not conflict with Section 38 of Article II of the Ohio Constitution. That section requires a formal complaint and a hearing only in cases involving removal of state officers for cause.

R. C. 3501.07 grants discretion to the Secretary of State as the appointing authority and does not operate to effect the removal of a public officer. Relators have not demonstrated that the provisions of R. C. 3501.07 conflict with or are prohibited by any constitutional provision.

On the merits of respondent's refusal to appoint them to the boards of elections, relators contend that mandamus is the proper remedy to correct an abuse of discretion by the Secretary of State under R. C. 3501.07 and that re-

spondent's reasons for refusing to appoint them are not supported by any credible evidence and are of no substance.

R. C. 3501.07 grants the respondent Secretary of State broad discretion in determining whether recommended appointees are competent to be members of boards of elections. The statute requires only that he submit his reasons for believing that the candidate would not be competent, in writing, to the county executive committee recommending him. The statute also specifies that in a mandamus proceeding before this court the burden of proving the qualifications of the candidate so recommended is upon the county executive committee.

The general rule in regard to the issuance of a writ of mandamus to appointing authorities is that such authorities, vested with the power of appointment to office, are generally entitled to exercise judgment and discretion in the matter, and where that is the case courts in mandamus actions will only compel the appointing board or officer to proceed to exercise the power of appointment, and will not allow a writ of mandamus to control or override the decision made. 52 American Jurisprudence 2d 604, Mandamus, Section 275. Cf. *Keim* v. *United States* (1900), 177 U. S. 290.

In *State, ex rel. Derwort,* v. *Hummel* (1946), 146 Ohio St. 653, this court held that Section 4785-9, General Code (the predecessor of R. C. 3501.07 and substantially the same in all relevant respects), authorizing the Secretary of State to determine whether a person recommended for appointment as a member of the board of elections is a qualified elector and will be a competent member of such board, clothes the Secretary of State with quasi-judicial power when exercising discretion in such matter. The court, at page 653, stated:

"Authority to appoint being vested in the Secretary of State by statute, a writ of prohibition will not issue to control the exercise of discretion by him. *State, ex rel. Firestone Tire & Rubber Co.,* v. *Duffy et al., Indus. Comm.,* 114 Ohio St. 702, 152 N. E. 656."

We think that the statute clearly empowers the Secretary of State to exercise his discretion in determining the qualifications and competency of persons recommended for appointment.

Prior to the enactment of R. C. 3501.07 and its predecessor, Section 4785-9, General Code, in 1929, this court had held that it was incumbent upon the Secretary of State to appoint recommended electors, unless the Secretary of State established by clear and convincing evidence that such recommended persons were disqualified to hold office. *State, ex rel. Culbert,* v. *Kinney* (1900), 63 Ohio St. 304; *State, ex rel. Brower,* v. *Graves* (1913), 89 Ohio St. 24; *State, ex rel. Kauffmann,* v. *Brown* (1924), 111 Ohio St. 289, *State, ex rel. Nolan,* v. *Brown* (1925), 113 Ohio St. 386; *State, ex rel. Nolan,* v. *Brown* (1926), 115 Ohio St. 1.

The enactment of Section 4785-9, General Code, and subsequently R. C. 3501.07, shifted the burden of proof of qualification in a mandamus action to those persons seeking the appointment.

This enactment, we believe, conforms to the general rule in mandamus actions that the writ will not issue to control the discretion of a public official vested with the power of appointment but may be invoked to remedy an abuse of such discretion. *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550; *State, ex rel. Wilms,* v. *Blake* (1945), 144 Ohio St. 619; *State, ex rel. Great Lakes College,* v. *Medical Bd.* (1972), 29 Ohio St. 2d 198.

An abuse of discretion in such a case must be more than an error of law or an error of judgment. It means discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *State, ex rel. Wilms,* v. *Blake, supra,* at page 624.

As this court stated, in *State, ex rel. Armstrong,* v. *Davey* (1935), 130 Ohio St. 160, 163, a case involving the discretion of the Governor in setting the date for a special election, that:

" 'Before the judiciary will interfere in such a case, it must clearly appear that such officer has so far depart-

ed from the line of his duty under the law that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion.' "

In the present case, the record indicates that the Secretary of State refused to appoint William F. Boyle to the Board of Elections of Lucas County, in case No. 74-145, and refused to appoint Don R. Gosney to the Board of Elections of Columbiana County, in case No. 74-147.

In case No. 74-145, the Secretary of State stated his reason for not appointing Mr. Boyle in a letter to the Lucas County Democratic Executive Committee, dated February 1, 1974. In relevant part, it states:

"The competence of a board member depends not only on his knowledge of the election law and the mechanics of its administration; it also includes his basic ability to get along with those with whom he must work and to inspire public confidence in the election system.

"It is my belief that personality conflicts cannot be allowed to be a disruptive influence in a board of elections. The ability to constructively cooperate is a necessity if the board is to properly perform the duties assigned to it by law. A board member must represent the interests of *all* of the people he serves, not just those of his own political persuasion.

"Mr. Boyle's performance during his current term has produced turmoil and tension that has hampered the ability of the board to transact necessary business. He has attempted to by-pass the board to undertake actions of dubious legality. He has injected abrasive partisan bickering into the conduct of board business, calling frequent and unnecessary meetings on short notice. His lack of tact and courtesy and his intrusion into administrative affairs, in violation of board policy regarding dealings with the staff, have damaged the harmony which once characterized the Lucas County Board and have undermined staff morale.

"In the interests of re-establishing a healthy working relationship on the board and restoring public confidence in it, I believe that another elector, one who possesses the

ability to achieve these ends, should be appointed to the position of board member."

Although those reasons reflect to a great extent the Secretary of State's personal views as to the requirements of a competent member of the board of elections, that determination is within the discretion granted the Secretary of State. A review of the minutes of the meetings of the Lucas County Board of Elections supports the allegations contained in the Secretary of State's letter, and in view of the existence of these facts upon which the Secretary of State based his decision, this court cannot say that he abused his discretion in refusing to appoint Mr. Boyle. In case No. 74-145, the writ of mandamus is denied.

In case No. 74-147, the Secretary of State refused to appoint Don R. Gosney to the Columbiana County Board of Elections. The Secretary of State set forth his reasons for this determination in a letter to Mr. Gosney, Chairman of the Democratic Executive Committee of Columbiana County, dated February 5, 1974, stating, in pertinent part:

"You are hereby notified of my refusal to reappoint you to the board of elections. My reason is that you are employed by Congressman Wayne Hays at a salary of $17,100 per year and that, therefore, you will not be able to properly function as a board member and as an employee of the Congressman, especially at a point in time during which Congressman Hays is a candidate for office. The two positions have the potential for conflict of interest.

"I believe there are strong public policy reasons as well as legal reasons for the view that board of elections members should not be on the payroll of persons seeking election or re-election to public office. In such instances of dual public employment, the official duties may be so administered and discharged that favoritism and preference may be accorded to an employer. The public should be protected from possible misuse of any public office."

The factual issues in this case have been admitted by the relators, and, although the Secretary of State's decision as to the existence of a conflict of interest is disputed, such

decision is within the statutory discretion granted him under R. C. 3501.07. In view of the existence of the evidence establishing that Mr. Gosney is the salaried employee of an elected official, we are not inclined to interfere with the Secretary of State's exercise of discretion in refusing to appoint him. The writ of mandamus in case No. 74-147 is denied.

*Writs denied.*

O'NEILL, C. J., CORRIGAN and P. BROWN, JJ., concur.
STERN, J., concurs in the judgment.
HERBERT, J., concurs in case No. 74-145, but dissents in case No. 74-147.
CELEBREZZE and W. BROWN, JJ., dissent.

STERN, J., concurring. R. C. 3501.07 which provides for the issuance of a writ of mandamus seeking the appointment of recommended electors to boards of elections does not come within the purview of the issuance of such extraordinary writs as found in Section 2(B), Article IV of the Ohio Constitution and in R. C. 2731.01 *et seq.*

In enacting the Ohio Election Code (R. C. Title XXXV) the General Assembly granted to the boards of elections and the Secretary of State quasi-judicial authority to determine certain matters presented to them for consideration. In many of the statutes where such decisions are authorized no statutory right of review is provided. The reason for this lack of a review procedure is that all the procedures pertaining to elections must conform to certain time schedules, so that elections may proceed without interruption on designated election dates. In fact, in many of these statutes the General Assembly has prescribed that such decisions are final. (See, *e. g.*, R. C. 3513.-262.) An analysis of R. C. 3501.07 reveals that the General Assembly in providing for the appointment of recommended electors to boards of elections recognized that such decisions should be finalized as quickly as possible, so that

the work of the board may not be impeded, and that there be four members of the board acting in their official capacity at all times.

In setting the tenure of office for board members provision is made for four year appointments (R. C. 3501.06). No provision is made that a member's term of office continues until his successor is appointed and qualified.

R. C. 3501.07 does not provide for appeal to a judicial tribunal from an order issued by the Secretary of State relative to the rejection for appointment of a recommended elector. The statute does authorize the party committee to "apply for a writ of mandamus to the Supreme Court to compel the Secretary of State to appoint the elector so recommended." The Secretary of State is granted some discretionary powers under this statute to appoint or to reject recommended electors. The issue before this court is whether the Secretary of State abused his discretion in rejecting such recommendations. The party committee has the burden of proof in attempting to establish its claim.

In other instances wherein a writ of mandamus is sought to control the discretion of a public officer, such requests for a writ have been properly denied. Writs may be employed to command a public officer to act upon a request but never to determine his decision. In the case before us the General Assembly has directed that mandamus be used to attack the decision of the Secretary of State.

## I

In case No. 74-145 (Lucas County) it is abundantly clear that the disruptive tactics of Mr. Boyle are such that the election procedures in that county could not proceed in an orderly manner. The record in that case indicates that his actions are such as would lead to a lack of confidence by the public in their election officials.

## II

In case No. 74-147 (Columbiana County) there appears to be a definite conflict of interest between the offices held by Mr. Gosney as a salaried employee to a congressman and as a member of the board of elections. Conflicts of interest

might well arise which could affect the candidacy of Mr. Gosney's employer in such areas as validity of a declaration of candidacy, petitions of candidacy, qualifications of electors, selection of booth officials, designation of precinct boundaries, validity of voted ballots, and rotation of candidate names on a ballot in both primary and general elections. (See R. C. 3501.11, 3501.18 and 3505.03.)

The election law of Ohio does not provide that a board member may disqualify himself from acting upon any matter presented to him. No provision is made to designate a substitute to act for such board member in the event of self-disqualification. If a question should arise as to a member disqualifying himself because of other interests which could influence his judgment as a board member, there would be only three votes cast upon the issue. Thus the protestant could not have the issue determined by the Secretary of State as in the event of a tie vote. (See R. C. 3501.11.)[1]

Members of boards of elections in performing their official duties act in a quasi-judicial capacity. Government in a democracy is postulated upon the confidence the people have in all persons serving them in an official capacity, particularly in the conduct of our elections wherein our citizens express their views as to candidates, issues, constitutional proposals, etc.

Based upon the record in case No. 74-147 it appears that Mr. Gosney as a paid employee of a publicly elected official cannot hold the office of a member of a board of elections, because there are too many instances where a conflict of interest could arise, affecting both his employer and his employer's political opponent in an election matter that would be manifestly unfair to all concerned, including the voting public.

I concur in the judgment of the majority in both cases.

O'NEILL, C. J., concurs in the foregoing concurring opinion.

---

[1] R. C. 3501.15 prohibits election officials from being candidates for public office, except for those offices enumerated therein.

HERBERT, J., dissenting in case No. 74-147. In case No. 74-147, respondent's objection to the appointment of Mr. Gosney is based upon a "potential" problem, *i. e.*, the "possible" *future* misuse of his office. I cannot accept the majority's conclusion that respondent's discretion in these matters is this broad.

The General Assembly has provided statutory means to control the conduct which respondent fears may happen at some time hence. R. C. 102.03(D), 102.04(B), 102.06, 102.99(B). Furthermore, there is nothing in the record before us which suggests that the confidence of the electors of Columbiana County in the fairness of the elective process, or in their board of elections, has been diminished by reason of Mr. Gosney's position.

CELEBREZZE, J., dissenting. A thorough examination of the record in these actions brings me to the conclusion that the procedures mandated by R. C. 3501.07 have been followed.

The majority has determined that the evidence presented in support of the reappointment of relators to their respective positions is insufficient to refute the opinion of the Secretary of State that they are not competent to be board of elections members.

It is at this point that I most emphatically disagree with the decision reached by the majority. They hold that R. C. 3501.07 vests in the Secretary of State sole, arbitrary and unfettered discretion to determine the competency of electors recommended as members of boards of elections.

Although I agree that the procedure followed pursuant to R. C. 3501.07 fulfills basic due process requirements, I cannot conclude that the Secretary of State's actions evidence a proper exercise of discretion.

In case No. 74-145, the Secretary of State based his decision upon an examination of the minutes of several board meetings. From that examination he determined that Mr. Boyle was producing "turmoil and tension that

has hampered the ability of the board to transact necessary business.'' My examination of the minutes reveals only that there was argument, healthy disagreement and sometimes even ''partisan bickering''; but the business of the board was carried out, and the board was an effective operating *unit*. If these are the criteria for determining lack of competence to serve on an election board, the Secretary of State should be able to refuse about half of those recommended for appointment.

Evidence produced by Mr. Boyle consists of affidavits from employees of the board of elections and persons familiar with Mr. Boyle to the effect that he is a highly motivated and competent public employee, who has performed his duties in a manner calculated to further the operation of the board. In addition, the Secretary of State relates in his affidavit that Mr. Boyle admitted to overreacting in board meetings and pledged to work for increased harmony with board members and staff.

As was stated by this court in *State, ex rel. Great Lakes College,* v. *Medical Bd.* (1972), 29 Ohio St. 2d 198, 200: ''* * * discretion must be exercised cautiously to safeguard the rights of those concerned.'' Instead of that cautious exercise, we are faced with the largely unsupported personal opinion of the Secretary of State. Basing a refusal upon such a thin stem of evidence seems to be exactly the type of abuse of discretion which the extraordinary remedy of mandamus is designed to correct.

Relator Gosney has held a position on the Columbiana County Board of Elections since 1951. During that same period he has been employed by Congressman Wayne Hays. Now the Secretary of State has determined that: ''The two positions have the *potential* for conflict of interest.'' (Emphasis added.)

To that ''evidence'' Mr. Gosney replies with affidavits similar to the ones compiled by Mr. Boyle. In addition, he asserts his past record for honesty and fairness in carrying out his duties. Even in the age of Watergate, absent any statute, I would not allow the Secretary of State what is,

in effect, unfettered discretion. Opinions, unsupported by evidence of lack of competence, should not control who can be appointed to a board of elections.

I would grant the writs in case Nos. 74-145 and 74-147.

WILLIAM B. BROWN, J., dissenting. On its face, R. C. 3501.07 grants a great deal of discretion to the Secretary of State, but in construing that section, a majority of this court has made that discretion absolute. R. C. 3501.07 provides that a nominee's qualifications may be proved to overcome the Secretary of State's adverse action. However, the majority holds that so long as the Secretary of State articulates a reason, which merely reflects his personal views, for not appointing a nominee, the determination based upon that "reason" is, in effect, within the Secretary's unassailable discretion.

I

*State, ex rel. Nolan,* v. *Brown* (1925), 113 Ohio St. 386, involved the precise issues presented by this case. In paragraph three of the syllabus this court held:

"Unless the * * * [Secretary of State] establishes in court, by clear and convincing evidence, that the party recommended by the committee is disqualified to hold the office, it is his duty to make the appointment recommended by the committee."

Again, in *State, ex rel. Nolan,* v. *Brown* (1926), 115 Ohio St. 1, the Secretary was required to show by clear and convincing evidence that the nominee was unqualified, or to make the appointment as recommended.

G. C. 4785-9 (the predecessor of R. C. 3501.07) was enacted in 1929 (113 Ohio Laws 307, 311), and, by its terms, shifted the burden of proving the nominee's qualifications from the Secretary of State to the nominating committee. In the first relevant decision after that enactment, *State, ex rel. O'Neil,* v. *Griffith* (1940), 136 Ohio St. 526, 531, this court stated: "* * * it is the duty of the Secretary of State to appoint the person recommended if such person be qualified."

170

Thus, the subject of a mandamus action, under R. C. 3501.07, is the nominee's "qualifications," and the object of inquiry is to determine the justness of the Secretary of State's refusal to appoint the nominee.

Both nominees herein have submitted much evidence as to their "qualifications." Their years of service on the boards of elections, the facts that they are qualified electors and that they reside in the proper counties, more than satisfy the qualifications required by statute. The statute is silent as to additional qualifications which must be established, and in the absence of specific, lawful disqualification, the nominees are entitled to appointment to the boards of elections.

II

The effect of the majority's interpretation of R. C. 3501.07 is that the Secretary of State's finding, that the nominees would not be competent board members, can only be overturned by proof of a negative, i. e., that the nominees are not incompetent or unqualified.

The term "competent" is defined in the American Heritage Dictionary of the English language, as "Legally qualified or fit * * *," and in Black's Law Dictionary (Rev. 4 Ed.), at 355, as: "Duly qualified; answering all requirements; having sufficient ability or authority; possessing the requisite natural or legal qualifications; able; adequate; suitable; sufficient; capable; legally fit."

From the foregoing, it appears that a nominee would be a "competent" member of the board if he is a qualified elector and is legally qualified to hold the position. The term "qualified electors" was defined in *State, ex rel. Nolan, v. Brown* (1926), 115 Ohio St. 1, as "electors possessing all the rights of electors of the county in general and qualified to exercise such rights, and in addition thereto must be qualified, in all other respects, to properly discharge all duties imposed by law upon deputy state supervisors of elections."

In *State, ex rel. Nolan, v. Brown, supra* (113 Ohio St. 386), the "qualification" of a person appointed by the exe-

cutive committee was directly in issue. There, the court ruled that the Secretary of State could legally withhold an appointment where the nominee would be "clearly disqualified for holding the office." The term "clearly disqualified" was applied in that case to the situation where the nominee had aided and abetted a board member in destroying ballots—a clear statutory violation, for which his accomplice was removed from the board for cause. Thus, the nominee was "incompetent" because he could not be seated on the board even if appointed to it. It is clearly a disability of this type, for which the Secretary of State may legally refuse to appoint a nominee.

### III

It is clear that respondent, in case No. 74-145, lacks legal basis for refusing to appoint Mr. Boyle. Respondent applied a great deal of subjectivity in reaching his conclusion that Mr. Boyle is not "competent" because there were reports that Boyle doesn't get along with board members. No statutory disqualification even approaches the meaning proposed by respondent. Holding that respondent may base his decision on such insubstantial grounds vitiates this court's rule of reason enunciated in *State, ex rel. Nolan,* v. *Brown, supra* (113 Ohio St. 386), at 392: "Surely the Legislature did not intend to substitute the opinion of the * * * [Secretary of State] in place of the opinion of the executive committee, and thereby permit the Secretary of State to arbitrarily overrule the action of the committee."

The slightest adherence to that rule entitles Mr. Boyle to the subject appointment and to a writ of mandamus in case No. 74-145.

### IV

That rule is equally applicable to Mr. Gosney in case No. 74-147.

R. C. 3501.07 requires that the Secretary of State have "reason to believe" that a nominee is incompetent.

Respondent never questioned Mr. Gosney's dual capacity as board of election member and secretary to a Con-

gressman until he failed to appoint Gosney early this year. On May 22, 1962, respondent wrote a letter in response to an inquiry about Mr. Gosney's status. The letter reads, in part: "* * * I am unable to see any reason why one person might not hold the two offices mentioned."

Moreover, an Attorney General's opinion was solicited in 1964 on Mr. Gosney's status. Attorney General Saxbe[2] unequivocally stated that Gosney's dual employment created no incompatibility of offices, and that no conflict of interest was apparent. Opinions of the Attorney General (1964), No. 897. The Attorney General is the only legal counsel respondent may consult in his official business.[3] His counsel stated his legal opinion, which is wholly correct upon the precise facts stated therein. Therefore, respondent cannot be acting on anything other than unfettered speculation as to a possible disqualification of a nominee at some remote point in time. To endorse such action is to endow respondent with unbridled discretion.

The frail word "competent" contained in R. C. 3501.07, if subjected to close scrutiny, would disappear altogether unless its clear meaning is applied, and that is: legally qualified.

The majority ably argues the proposition that the Fourteenth Amendment to the United States Constitution does not apply to this case. However, such argument does little to advance the function of this court, which is to administer justice regardless of the legal or political magnitude of an issue. That a controversy does not reach constitutional proportions is no justification for this court to depart from ideals of fundamental fairness.

For the foregoing reasons, I dissent.

---

[2] The same opinion writer is now the chief law enforcement officer of the United States, i. e., the Attorney General of the United States.

[3] R. C. 109.02 provides in part:

"The Attorney General is the chief law officer for the state and all its departments * * *. No state officer * * * shall employ * * * other counsel or attorneys at law."