THE STATE ex rel. BRYANT, Appellee,

v.

KENT CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellant.

[Cite as *State ex rel. Bryant v. Kent City School
Dist. Bd. of Edn.* (1991), 71 Ohio App.3d 748.]

Court of Appeals of Ohio,
Portage County.

No. 90–P–2213.

Decided April 2, 1991.

*Robert J. Walter* and *Robert M. Greggo,* for appellee.

*R. Brent Minney,* for appellant.

CHRISTLEY, Judge.

In February 1988, appellee filed a complaint in mandamus against appellant in the Portage County Court of Common Pleas. For relief, appellee sought an order requiring appellant to restore him to his "proper" position as a substitute driver. He also sought damages covering the back wages and other benefits he had lost as a result of the wrongful discharge. The court granted this writ and this appeal followed.

As part of its responsibility to provide transportation for students both to and from school, appellant, the Board of Education for the Kent City School District, maintains a staff of both full-time and substitute bus drivers. The latter group of drivers is used on an "as needed" basis, replacing those regular drivers who are unable to complete their assigned routes. The decision of which substitute to use in a given situation is within the discretion of the transportation supervisor.

As part of his duties, the transportation supervisor also maintains a list of drivers known as the "nighttime roster." The drivers on this limited list are used to take students on field trips and other extracurricular activities. Unlike the day substitutes, these drivers are used on a rotation basis. As a result, they are guaranteed a certain percentage of whatever trips are taken.

In March 1983, appellant hired appellee, Robert Bryant, as a substitute driver. During the remainder of the 1982–1983 school year, appellee worked approximately one hundred five hours in that capacity. In the following school year, he worked approximately one hundred ninety hours as a substitute, and was also a driver on the nighttime roster.

In June 1984, appellee was fired from his position for alleged insubordination. After appellee had filed an appeal under R.C. 124.34, the Kent Civil Service Commission disaffirmed the termination and ordered appellee's reinstatement. This decision was then affirmed on appeal by the Portage County Court of Common Pleas.

Upon technically being reinstated in 1986, appellee attended a bus drivers' meeting, for which he received compensation. To satisfy part of the requirements for his position, he was also given a physical examination for which appellant paid. However, during the eighteen-month period following his reinstatement, the trial court found, appellee was never called upon by the transportation supervisor to substitute for a full-time driver. Nor was appel-

lee assigned to drive on any field trips. Finally, in 1988, appellee filed his complaint in mandamus.

In answering the complaint, appellant alleged that it had complied with the requirements of the decision of the Kent Civil Service Commission. Appellant also admitted that appellee was entitled to back wages and benefits.

After the parties engaged in discovery, a hearing was held on the issue of appellant's compliance with the prior decision. Based upon the evidence presented, the trial court held that by not using appellee in the same manner as it had prior to the termination, appellant was attempting "an end run" to "avoid" the order of the commission. Accordingly, the court granted the writ and ordered that appellee be reinstated "in fact."

Approximately three months following the entry of this first judgment, a second hearing was held on the damages question. Based upon documents submitted by appellee, the trial court awarded him $18,239.18. The majority of this award covered the wages appellee supposedly would have earned as a substitute driver during the six-year period since his termination. This amount was based upon the average amount of hours which other substitutes had actually worked in each of the past years. The remainder of the award covered the wages appellee supposedly would have earned from night field trips during the 1984–1985 school year.

Following the entry of this second judgment, appellant filed a timely appeal from both judgments. It now asserts the following as error:

"The trial court erred when it found that the respondent-appellant failed to comply with the order of the Kent Civil Service Commission and directed the respondent-appellant to reinstate the relator-appellee.

"The trial court erred in computing the damages to which the relator-appellee is allegedly entitled."

As both parties to this appeal correctly note, a writ of mandamus will lie only when the relator can satisfy three basic criteria:

"In order to grant a writ of mandamus, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State ex rel. Westchester Estates, Inc. v. Bacon* (1980), 61 Ohio St.2d 42, 15 O.O.3d 53, 399 N.E.2d 81, paragraph one of the syllabus.

■ Under its first assignment, appellant contends that the trial court erred in granting the writ of mandamus because appellee, as relator below, failed to satisfy the second criterion, that of duty. This argument is based upon the proposition that in order to comply with the order of the Kent Civil Service

Commission, appellant merely had to redesignate appellee as a substitute driver. Specifically, appellant maintains that it was not obligated to guarantee appellee a minimum number of hours as a substitute driver upon his reinstatement.

As part of its factual findings in its first judgment, the trial court stated:

"A substitute bus driver is employed on an 'as needed basis.' There is no rotation system and there are no minimum hours guaranteed. The Transportation Supervisor determines the need for substitutes and which individual to call when a substitute is needed."

Relying upon this finding, which is supported by the evidence in the trial transcript, appellant asserts that the choice of which substitute driver to call in a given situation was a matter within the discretion of the transportation supervisor. Appellant then argues that by requiring the supervisor to treat appellee as he did before termination, the trial court's order controls that discretion. We disagree. The order called for reinstatement, not just as a name to a list, but restoration to the former position—that of a substitute bus driver who was being actively and regularly used as needed.

As a general proposition, a writ of mandamus will not lie to control the discretion of an administrative officer. *State ex rel. Benton's Village Service v. Usher* (1973), 34 Ohio St.2d 59, 63 O.O.2d 90, 295 N.E.2d 657. However, it will lie to correct an abuse of discretion. *State ex rel. Great Lakes College v. State Medical Bd.* (1972), 29 Ohio St.2d 198, 58 O.O.2d 406, 280 N.E.2d 900. In the mandamus context, an abuse of discretion occurs when a decision is "to an end or purpose not justified by, and clearly against, reason and evidence." *State ex rel. Democratic Executive Committee v. Brown* (1974), 39 Ohio St.2d 157, 161, 68 O.O.2d 100, 103, 314 N.E.2d 376, 379.

The facts of this case could not be more clear in supporting a finding of an abuse of discretion by appellant vis-a-vis a total lack of good faith compliance regarding the civil service mandate and subsequent court order.

During his testimony, the supervisor admitted that appellee was never actually contacted although he claimed to have tried to call him several times. The supervisor also said that other substitute drivers were being used frequently and that he himself sometimes acted as a substitute.

Thus, there was no evidence that there was any decline in need for the services of the substitute drivers, nor was there evidence of any overwhelming availability of substitutes. Apparently there was a definite need for substitute services during this interval, and the decision not to use appellee was not based upon any enumerated valid reason.

Appellee further testified that shortly after his reinstatement, the supervisor told him " * * * that he didn't have to worry about me working there anymore." Thus, credibility was an obvious factor concerning the weight assigned to the evidence by the trial court.

■ Also under this first assignment, appellant submits that the writ was not warranted because appellee failed to establish that he was still qualified to operate a school bus. Appellant contends that not only did appellee fail to take the required physical examination, but his chauffeur's license had expired.

As to this point, this court would simply note that there was substantial evidence indicating that appellant had continually thwarted appellee's efforts to remain qualified. The record indicates that from December 7, 1989 until January 31, 1990, appellee did not have a chauffeur's driver's license. Subsequent to that he failed to obtain his bus driver's endorsement. During his testimony, appellee stated that the supervisor had refused to give him the required form for the physical. He also testified that unlike other substitute drivers, he was never informed about the new state requirements for retaining his license to operate the bus. Thus, the record before this court contains evidence supporting the conclusion that not only did appellant passively resist reinstatement, appellant tried to actively hinder appellee's attempts to remain qualified for this job.

Considering the lack of good faith in regards to appellant's failure to implement the clear intent and import of the court order affirming the Kent Civil Service Commission, this court finds it difficult to attach much significance to appellee's failure to remain properly licensed at the close of almost six years of stonewalling. Even the most dedicated of litigants is bound to suffer from a loss of initiative after suffering such extensive bureaucratic stonewalling. In good conscience, we cannot allow the appellant to profit from such tactics by requiring appellee to continue bashing his head fruitlessly and without cease against that wall for the entire duration. Under these circumstances, appellant's first assignment is without merit.

■ Appellant's second assignment challenges the merits of the trial court's decision as to the award of damages covering the back wages appellee would have made had he been used as a substitute driver. As was noted earlier, this aspect of the damages award was based upon the average number of hours actually worked by substitutes who were used during this period. Appellant submits that this award was inappropriate, since it was based upon speculation as to how many hours appellee would have worked if he had not been terminated.

In support of this argument, appellant cites *State ex rel. Dennis v. Hillsdale Local Bd. of Edn.* (1988), 39 Ohio St.3d 158, 529 N.E.2d 1248, in which the Supreme Court considered the question of the type of contract to which a substitute teacher was entitled after his contract had been wrongfully terminated. In holding that the relator was entitled only to a substitute teacher's contract and not a limited contract as a *regular* teacher, the court emphasized that since substitute teachers were used only on an "as needed" basis, the school board could not be compelled to enter into an agreement guaranteeing a certain amount of work.

Based upon this proposition, appellant argues that appellee was not entitled to have his back wages based upon the average of other substitutes.

*Dennis* does not deal with, nor does it preclude, a damage assessment such as we find in the instant case. *Dennis* states: "It would be illogical to compel a school board to employ a substitute teacher *whose services are not needed.*" (Emphasis added.) *Id.* at 161, 529 N.E.2d at 1250.

Our position that it is logical to compel a school board to employ and use a substitute bus driver whose services *are needed* is not contrary to *Dennis.*

The fact that the Kent School Board was not required to guarantee a specific number of hours to appellant does not preclude the court from using an averaged amount for its damage computation.

The amount of hours which a substitute would get in any year is primarily a function of the total amount of substitute hours available. While there are other factors which influence how much time an individual substitute would receive, an average figure most closely approximates the amount of time appellee would have worked had he been reinstated in fact, as well as in title. Thus, appellant's second assignment is also without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.