JOURNAL ENTRY AND OPINION
Petitioner is the defendant in State v. Nawash, Cuyahoga County Court of Common Pleas, Case No. CR-422741. Petitioner was indicted by the grand jury for two counts of conspiracy to commit aggravated murder; one count of conspiracy to commit aggravated arson; two counts of conspiracy to commit aggravated robbery; attempted insurance fraud; two counts of attempted aggravated murder; attempted aggravated arson; and two counts of attempted aggravated robbery.
The record before this court indicates that the Cleveland Municipal Court originally set petitioner's bond at $30,000. However, the court recalled the case to hear additional arguments pertaining to bond and subsequently raised petitioner's bond to $100,000. The State of Ohio then contacted the Office of the Bond Commissioner and requested that a higher bond be imposed. Thereafter, Judge Thomas J. Pokorny raised petitioner's bond to $1 million.
Petitioner's bond was continued after his arraignment and the matter was assigned to the docket of Judge Anthony O. Calabrese, Jr. Pursuant to a motion to reduce bond, a hearing was held before Judge Calabrese on May 16, 2002. The matter was continued to May 23, 2002, in order for both sides to present evidence in support of their argument. Copies of both transcripts were attached to the petition and to the State's opposition. At the end of the hearing, the court made the following announcement in denying the petitioner's motion to reduce bond:
 "The court has listened very attentively to the evidence in the last hearing and this hearing. And to the exhibits, I'm aware of what was proffered here. I might add that Mr. Giuliani was alluding to a person who owns property or has family here, who has family ties here.
 "I might indicate to you that I had the exact individual in my courtroom many years ago who was a medical doctor. I gave him a few weeks to get his affairs in order. I confiscated his passport. I had many people write to the court of behalf of him. And they are still looking for him.
 "So this court has knowledge that the travel modes of people traveling in and out of this country are very loose, to say the least. So as far as the defendant traveling in and out of the country, I'm not sure that anybody would be able to say with certainty as to someone's whereabouts, especially in view of the events in the last year in this country.
 "The nature and circumstances of the crimes charged here are very serious. Probably one of the most serious. The court finds the weight of the evidence against the defendant compelling. The motion to reduce bond is overruled. Exception to the defense."
On June 3, 2002, petitioner commenced this habeas corpus action. Petitioner contends that the bail set by the common pleas court in the amount of $1 million is excessive and requests that this court reduce his bail to $50,000 along with other reasonable conditions the court may wish to impose. On June 6, 2002, respondent, through the Cuyahoga County Prosecutor's Office, filed a brief in opposition requesting that this court deny the petition. Thereafter, on June 11, 2002 and June 26, 2002, petitioner filed a reply to respondent's brief in opposition and a supplement to his original petition. On July 15, 2002, the court of appeals granted an oral hearing.
At the hearing, petitioner claimed that the increased bond was based upon false information concerning his citizenship and passport, and that petitioner was not a flight risk and any such fear is mere speculation. Petitioner further argued that he must meet with his attorneys to translate approximately four hours of audio tapes that are going to be used by the State, and current jail policies prevent them from meeting for more than 30 minutes.
In their motion in opposition and at the hearing, the State of Ohio argued that the $1 million bond is not unreasonable. The State claimed that the evidence against petitioner is substantial and that the crimes are of a serious and violent nature. The State also argued that, if convicted, petitioner faces a severe penalty. The State further argued that petitioner is a flight risk. The State contended that merely surrendering a passport and having family ties to the community does not prevent an individual from absconding. According to the State, the petitioner, who emigrated from what was formerly known as Palestine, could travel to New York or Toronto and visit an Arab nation consulate and obtain a passport. Furthermore, in determining whether the petitioner is a flight risk, the State asked this court to consider that petitioner "has access to considerable assets and has apparent ties to persons who engage in the act of smuggling of people across borders * * *." The principles governing habeas corpus in these matters are well established. Under both the United States Constitution and the Ohio Constitution, "excessive bail shall not be required." If the offense is bailable, the right to reasonable bail is an inviolable one which may not be infringed or denied. A person charged with a bailable offense cannot be required to furnish bail in an excessive or unreasonable amount. In re Lonardo
(1949), 86 Ohio App. 289, 89 N.E.2d 503.
Pursuant to Crim.R. 46, in determining what is reasonable bail, the court must consider all relevant information including, but not limited to, the nature and circumstances of the crime charged; the weight of the evidence against the defendant; the confirmation of the defendant's identity; the defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution; and whether the defendant is on probation, a community control sanction, parole, post-release control, or bail.
In Ohio, the right to reasonable bail is protected by the writ of habeas corpus. In re Gentry (1982), 7 Ohio App.3d 143, 454 N.E.2d 987. When reviewing habeas writs claiming excessive bail, petitioner argues that this court must make an independent determination on constitutional grounds whether bail is excessive. Petitioner, however, does not present any authority to support this proposition.
Contrary to petitioner's assertion, our review of an action in habeas corpus is well-settled. This court must determine whether the trial court abused its discretion. Jenkins v. Billy (1989), 50 Ohio St.3d 270,538 N.E.2d 1045; Gentry; Lewis v. Telb (1985), 26 Ohio App.3d 11,497 N.E.2d 1376; In re Green (1995), 101 Ohio App.3d 726, 656 N.E.2d 705;Periandri v. McFaul (2001), 142 Ohio App.3d 588, 756 N.E.2d 682; Muntaserv. McFaul (June 6, 2002), Cuyahoga App. No. 81165; Birner v. McFaul
(Nov. 21, 2001), Cuyahoga App. No. 80408.
An abuse of discretion means more than an error of law or an error of judgment. It means an action that is arbitrary, unreasonable, unconscionable, or clearly against reason and evidence. It has also been defined as a "view or action that no conscientious judge, acting intelligently, could have honestly taken." State ex rel. Wilms v. Blake
(1945), 144 Ohio St. 619, 624, 60 N.E.2d 308, citing Long v. George
(1936), 296 Mass. 574, 579, 7 N.E.2d 149; Gentry; State ex rel. GreatLakes College, Inc. v. State Medical Board (1972), 29 Ohio St.2d 198,280 N.E.2d 900; State ex rel. Alben v. State Employment Relations Board,76 Ohio St.3d 133, 1996-Ohio-120, 666 N.E.2d 1119; and State ex rel.Bryant v. Kent City School District Board of Education (1991),71 Ohio App.3d 748, 595 N.E.2d 405.
In this matter, the record indicates that petitioner is a 54 year-old, naturalized, American citizen of middle-eastern descent who has resided in the United States since 1986. He currently resides in Brunswick with his wife and four children. Petitioner has approximately $75,000 equity in his home. Three of petitioner's children attend Brunswick City Schools and his wife attends Cleveland State University. Petitioner is a religious leader in the local community and is also the owner of a business which is the subject of the aggravated arson charge. The record also indicates that petitioner currently possesses a United States Passport and at one time possessed a Jordanian Passport, but it has subsequently expired.[1] There is no record of the petitioner having any prior criminal record.
At the May 23, 2002 hearing, the State of Ohio called Special Agent Liberti to testify about the basis of the charges against the petitioner. Special Agent Liberti testified that as a result of a information obtained from a confidential informant, an undercover agent made contact with the petitioner and a co-defendant, Ahmed Jaffal.[2]
At the meeting, the petitioner and the co-defendant attempted to hire the undercover agent to fire bomb the petitioner's business so the petitioner could collect the insurance proceeds, and to kill and rob two people. Special Agent Liberti testified that the reason for attempted killings was to get even because of a bad business relationship, and because the purported victim was disrespectful of the petitioner at petitioner's business. The meetings were recorded and one meeting between the co-defendant and a potential murder victim was video-taped.
Special Agent Liberti further testified that it is very easy to travel outside the United States without detection. The evidence further demonstrated that the petitioner has a United States passport and a Jordanian passport, though he has not used the Jordanian passport since 1992.
Similar cases provide benchmarks for evaluating whether bail is reasonable. In Birner, supra, this court ruled that a $1 million bond was not an abuse of discretion where the petitioner was accused of being a leader of a Canadian-American drug ring and had connections to the Philippines and organized crime.
Recently, in Muntasser, supra, this court upheld the lower court's decision imposing a $1 million dollar bond where the petitioner was charged with murder, there was substantial evidence that connected the petitioner to the crime, the petitioner made comments about fleeing the country, was a naturalized citizen and had ties to foreign countries.
After considering the factors as set forth in Crim.R. 46, we cannot conclude that the trial court abused its discretion in setting bail. We initially note that in petitioner's favor, he has no prior felony convictions, and has family ties to the local community. However, the nature and circumstances of the crimes are serious and favor the respondent's position. "If an accused is charged with crimes the conviction for which would result in long incarceration, with little hope of early release or probation, the incentive to abscond is greater and the amount must be such as to discourage the accused from absconding."Bland v. Holden (1970), 21 Ohio St.2d 238, 257 N.E.2d 397. Additionally, at this stage of the proceedings, this court must assume the truth of the allegations of the indictment in considering the seriousness of the offense charged for the purpose of fixing bail. Gentry, supra.
The weight of the evidence against the petitioner is also substantial. Additionally, while the petitioner is a naturalized citizen, he still retains contacts to the Middle East and has apparent ties to persons who engage in the act of smuggling of people across borders. Thus, a reasonable judge could conclude that the petitioner poses a significant flight risk to a portion of the world in which extradition could be difficult.
Accordingly, the petitioner's application for a writ of habeas corpus is denied. Petitioner to pay costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R 58(B).
MICHAEL J. CORRIGAN, J. and ANNE L. KILBANE, J., CONCUR.
[1] At the oral hearing on July 15, 2002, the State of Ohio conceded that petitioner is a naturalized American citizen and no longer possesses a valid Jordanian Passport.
[2] According to the State of Ohio, the reason for the FBI's initial involvement was the defendant's alleged attempts to hire someone to engage in smuggling an individual of middle eastern descent into the United States through Canada, and prepare false identification for this individual.