THE STATE, EX REL. CAIN, APPELLEE, *v.* KAY, APPELLANT.

(No. 73-761—Decided April 10, 1974.)

16

*Messrs. Cain & Lobo; Mr. Arthur L. Cain* and *Mr. Robert R. Soltis,* for appellee.

*Mr. Richard B. Kay, in propria persona.*

HERBERT, J. A single issue needs to be resolved in this case: Can an individual claimant bring an action in quo warranto to determine by what authority the respondent claims right and title to the office of chairman of the state central committee of a political party?

Quo warranto is a high prerogative writ of an extraordinary nature. *State, ex rel. Day,* v. *Superior Savings & Loan Assn.* (1971), 25 Ohio St. 2d 79, 266 N. E. 2d 842. Its provenance was in early English common law, where its function was to safeguard the public interests by protecting the right of the crown against the unlawful usurpation of governmental prerogatives. A proceeding in the nature of quo warranto was an action by the crown inquiring by what authority a claimant of any office or franchise supported his claim. Eventually, the right to bring the action was extended to individual claimants for the purpose of questioning the authority of one claiming title to an office, the individual claimant's and the state's interests being, in such a case, considered commensurate. See *State, ex rel. Lindley,* v. *Maccabees* (1924), 109 Ohio St. 454, 142 N. E. 888. However, the writ remained essentially a means to be employed principally by the crown to question unlawful intrusion into government interests.

In Ohio, the writ of quo warranto is treated as a civil action and is used chiefly to question the authority of claimants asserting right and title

to public offices or corporate franchises. See *State, ex rel. Price,* v. *Columbus, Delaware & Marion Elec. Co.* (1922), 104 Ohio St. 120, 135 N. E. 297. Sections 2 and 3 of Article IV of the Constitution of Ohio confer original jurisdiction in quo warranto upon the Supreme Court and the Courts of Appeals. Cf. *State, ex rel. Corrigan,* v. *Wheeler* (1971), 27 Ohio St. 2d 9, 271 N. E. 2d 862; *Ohio, ex rel.,* v. *Railway Co.* (1895), 53 Ohio St. 189, 41 N. E. 205. The procedure to be employed in an action in quo warranto is contained in R. C. Chapter 2733.[1] Although R. C. 2733.06 supports the right of an individual claimant to bring an action in quo warranto to question title to a public office, quo warranto has retained its common-law character as a means "* * * to be employed to shield the sovereignty of the state from invasion and to prevent the abuse of corporate powers." *State* v. *Dayton Traction Co.* (1901), 64 Ohio St. 272, 280, 60 N. E. 291. The right to bring an action in quo warranto remains, as at common law, a right of the state, and, except where title to a public office is involved, the use of quo warranto remains in the state or its officers. *State, ex rel. Mick,* v. *Burke* (1929), 120 Ohio St. 410, 414, 166 N. E. 354. See *State, ex rel. Crabbe,* v. *Thistle Down Jockey Club* (1926), 114 Ohio St. 582, 151 N. E. 709.

When a claimant institutes a quo warranto proceeding pursuant to R. C. 2733.06, he must show not only that he is entitled to the office and that the office is unlawfully held by the respondent in the action, but also that the office is a "public office" for purposes of quo warranto. See *State, ex rel. Heer,* v. *Butterfield* (1915), 92 Ohio St. 428, 111 N. E. 279. R. C. 2733.06 does not define "public office," and the definitions developed in this court and others are numerous, varied, and not wholly consistent. *E. g., State ex rel. Bricker,* v. *Gessner* (1935), 129 Ohio St. 290, 195 N. E. 63 (membership on a county charter commission constitutes a public office); *State, ex rel. Stanton,* v. *Callow* (1924), 110 Ohio St. 367, 143 N. E. 717 (county building

---

[1]The case at bar does not present the question of whether the General Assembly is empowered to vary the substantive aspects of quo warranto from those existing at common law.

commissioners are not public officers); *State, ex rel. Godfrey*, v. *O'Brien* (1917), 95 Ohio St. 166, 115 N. E. 25 (members of county board of revision are public officers); *Palmer* v. *Zeigler* (1907), 76 Ohio St. 210, 81 N. E. 234 (county infirmary superintendent is not a public officer); *State, ex rel. Atty. Genl.*, v. *Jennings* (1898), 57 Ohio St. 415, 49 N. E. 404 (firemen, other than the chief of the department, are not public officers). These cases indicate that judicial development of a definition of "public office" which would be all-inclusive and would serve without fault in all situations has been an elusive goal. However, the general principles that should guide the determination were perhaps best articulated in *State, ex rel. Atty. Genl.*, v. *Jennings, supra*, at page 424:

"It will be found * * * that the most general distinction of a public office is, that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the state. * * * 'An office, such as to properly come within the legitimate scope of an information in the nature of *quo warranto*, may be defined as a public position, to which a portion of the sovereignty of the county, either legislative, executive, or judicial, attaches for the time being, and which is exercised for the benefit of the public.' "

In *State, ex rel. Hayes*. v. *Jennings* (1962), 173 Ohio St. 370, 182 N. E. 2d 546, this court held that members of a county central committee of a political party held public offices, by virtue of the authority vested in them by R. C. 305.02(B) to fill vacancies in certain offices held by members of the party. In *Hayes*, it was the delegation by statute of one of the sovereign functions of government, to be exercised for the public benefit, to the county central committeemen that outweighed the traditional reluctance of the court to interfere in the internal affairs of political parties. Political parties are basically voluntary associations of persons who act together principally for party and community purposes. Courts should defer to the appropriate party tribunals established by the members for the resolu-

tion of internal disputes of the party. For purposes of quo warranto, it is only where party officers assume duties affecting activities beyond the sphere of the internal affairs of the party and exercise official powers that are part of the sovereign functions of the state, properly exercisable for the public benefit, that the courts will intercede. See *State, ex rel. Hayes,* v. *Jennings, supra.*

Unlike members of a county central committee, the chairman of a state central committee is not authorized by statute to assume duties or to exercise official powers that involve the sovereign functions of government. His duties and powers extend only to the bounds of the political party and are exercisable only with respect to the internal affiars of the party. Hence, the office of chairman of the state central committee of a political party is not a public office, and is not amenable to quo warranto. In this respect, it should be noted that the case at bar does not present the question of whether members of the state central committee of a political party are public officers for purposes of quo warranto. See R. C. 3513.31; *Hayes, supra.* We are concerned here only with the position of chairman of the state central committee, a post filled through election by the committee members.[2] Disputes conerning such position are properly resolvable within the internal structure of the party and before the appropriate party tribunals.

It was error for the Court of Appeals to entertain appellee's complaint in quo warranto. Accordingly, the judgment of the Court of Appeals is reversed and the cause is dismissed.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

[2]Parenthetically, however, it is undisputed that appellant was not, at the time this action was initiated, a duly elected member of the state central committee.