**William G. BANCHY, Douglas B. Robinson, Donna Carnevale, and Marilyn Schutte, Plaintiffs–Appellants,**

v.

**The REPUBLICAN PARTY OF HAMILTON COUNTY and John H. Hermanies, Defendants–Appellees.**

No. 89–3288.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1990.

Decided March 26, 1990.

---

**1193**

Charles T. Lester, Jr., James J. Condit, Thomas W. Condit (argued), Condit & Dressing, Cincinnati, Ohio, for plaintiffs-appellants.

Mark C. Bissinger, Carl J. Stich, Jr. (argued), Dinsmore & Shohl, Cincinnati, Ohio, for defendants-appellees.

Before KENNEDY and BOGGS, Circuit Judges, and HULL, Chief District Judge.*

---

* The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. The plaintiffs also alleged a cause of action for violation of the United States Constitution, breach of contract, and breach of the Ohio Sunshine Law. The plaintiffs have not asserted these claims as a basis for attorneys' fees in this

KENNEDY, Circuit Judge.

This case requires us to decide whether the election of political party officers is arguably state action under 42 U.S.C. § 1983 for the purpose of an award of attorneys' fees. The plaintiffs, four newly elected Republican precinct executives, filed suit alleging that the Republican Party of Hamilton County, Ohio, and various officials of the party had denied them the right to participate in the election of their respective ward chairmen and thereby violated section 1983.[1] After the filing of the suit, the defendants agreed to hold new elections for ward chairmen. The plaintiffs then moved for the award of attorneys' fees pursuant to 42 U.S.C. § 1988 claiming that their lawsuit was the catalyst for the Republican Party's action. The District Court denied relief finding that the Republican Party's actions did not constitute state action. 707 F.Supp. 323. We AFFIRM.

## I.

On May 3, 1988, plaintiffs-appellants were selected as Republican precinct executives in Hamilton County, Ohio. The results of this election were officially certified by the Hamilton Board of Elections on May 19, 1988. Shortly after the election, Republican precinct executives selected their ward chairmen. The plaintiffs complain that they were not afforded the opportunity to vote for their respective ward chairman as provided for in the party constitution. These complaints are based on one of two allegations: (1) that some plaintiffs were not notified of the meetings to select ward chairmen; or (2) that other plaintiffs were denied the opportunity to participate in the circulation and signing of petitions for the selection of ward chairman because a majority of the precinct executives of their ward had already signed peti-

appeal. Accordingly, we consider their claim only under § 1983. In any case, only the cause of action arising under the United States Constitution could arguably provide an additional basis for civil rights attorneys' fees. Claims arising under the United States Constitution must also meet the state action requirement.

tions. The plaintiffs assert that they were excluded because they are sympathetic to the right-to-life movement, though they did not allege this in their complaint.

On the same day the complaint was received the chairman of the County Executive Committee called the plaintiffs' counsel regarding the allegations. Rather than dispute the merits of the suit, the defendants volunteered to hold new election meetings. The parties did not enter into a formal, written settlement, however.

In Ohio the precinct executives of a county, taken as a group, form a party's central committee for that county. The central committee is ultimately responsible for acting on behalf of the county party. Pursuant to Ohio law, the central committee of each party is also responsible for filling vacancies that occur in certain county offices formerly held by party members. Ohio Rev.Code Ann. § 305.02 (Anderson, 1987).

Under the constitution of the Republican Party of Hamilton County, the precinct executives of each ward are also responsible for electing a ward chairman. All of a county's ward chairmen together form the Executive Committee of the County Central Committee. Ohio law mandates that the party elect an executive committee but does not specify the method of election. Ohio Rev.Code Ann. § 3517.03 (Anderson, 1988). The Executive Committee, in turn, is responsible for acting on behalf of the Central Committee during the intervals between the Central Committee meetings.

## II.

In *Johnston v. Jago*, 691 F.2d 283, 286 (6th Cir.1982), this Court established a two-prong test for determining whether a party is a prevailing party within the meaning of section 1988 when a settlement of the suit has occurred. First, "a plaintiff must demonstrate that his or her lawsuit was causal-

ly related to securing the relief obtained." Second, the plaintiff must demonstrate that the defendant's conduct is legally required by a federal civil rights statute. This second prong does not require a trial on the merits, "[r]ather, the trial court need only consider whether the plaintiff's claim is 'frivolous, unreasonable or groundless.'" *Id.* at 286 (citation omitted).[2]

■ The District Court did not address the merits of the case under the first prong of this test but proceeded to the second prong. Since the claim for attorneys' fees was made on the basis of the § 1983 cause of action, the court correctly determined that plaintiffs must allege that the defendants: (1) deprived the plaintiffs of some right or privilege secured by the constitution and laws of the United States; and (2) acted under color of state law. *See, e.g., Graham v. NCAA*, 804 F.2d 953 (6th Cir. 1986). The court determined that the plaintiffs could not meet the state action requirements. Accordingly, the Court declined to award attorneys' fees.

■ We need not decide whether the plaintiffs have established that they were deprived of a right protected under the constitution since we decide that the defendants did not act under color of state law. The plaintiffs claim that they have established a colorable claim of state action in two ways. First, they argue that the special powers granted to the county central committees of major political parties by the State of Ohio raises a colorable argument that all the actions of a committee constitute state action. We disagree. While section 305.02 delegates to the central committees of a state party the power to appoint certain county officials when a vacancy occurs, this does not mean that all actions of a central committee constitute state action. When performing the narrow duties assigned to it under section 305.02, the Cen-

---

2. The defendants argue that our review should be more searching since without a viable § 1983 cause of action the federal court arguably lacks jurisdiction to award attorneys' fees. We disagree. The jurisdictional standard is at least as weak as the standard employed in *Jago,* and probably weaker. *See, e.g., Hagans v. Lavine,*

415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) ("the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit' ... 'wholly insubstantial' ... 'obviously frivolous'") (citations omitted).

tral Committee of the Republican Party may well be engaging in state action. *State ex rel. Hayes v. Jennings,* 173 Ohio St. 370, 374, 182 N.E.2d 546 (1962) ("[t]he power conferred by Section 305.02, Revised Code, upon central committeemen makes them public officers"); *see also Smith v. Allwright,* 321 U.S. 649, 663, 64 S.Ct. 757, 764, 88 L.Ed. 987 (1944) ("[t]he party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party"). When engaging in party activities, such as electing ward chairmen, distinct from their official governmental duties, the members of the Central Committee do not continue to act under color of state law merely because they have some governmental duties. There must be some allegation that the activities directly influence the governmental duties.

It could be argued that the selection of the ward chairmen who together constitute the Executive Committee in some way influences the Central Committee in the exercise of its section 305.02 appointment power. The constitution of the Republican Party of Hamilton County undercuts this assertion, however. While the Executive Committee does take care of matters that arise between Central Committee meetings, it has no formal control over the Central Committee. The Central Committee elects officers separately from the Executive Committee. The party constitution does not grant Executive Committee members any additional authority within the Central Committee or any additional duties during Central Committee meetings because of their Executive Committee membership. *Cf. State ex rel. McCurdy v. DeMaioribus,* 9 Ohio App.2d 280, 283, 224 N.E.2d 353 (1967) (since central committeemen are public officials then the presiding officer of the Central Committee is also a public official). Finally, the constitution does not give the Executive Committee the right to veto any decision made by the Central Committee, much less the authority to veto an appointment decision made under the authority of section 305.02. *Cf. State ex rel. Cain v. Kay,* 38 Ohio St.2d 15, 19, 309 N.E.2d 860

(1974) (state party chairman is not a governmental official merely because county central committee exercises governmental functions).

The plaintiffs also suggest that since Ohio law mandates that the party elect an executive committee, the election itself is under color of state law. Again, we disagree. Initially, we express grave doubts that the statute is enforceable in light of the Supreme Court's recent decision in *Eu v. San Francisco County Democratic Central Comm.,* —— U.S. ——, 109 S.Ct. 1013, 1025, 103 L.Ed.2d 271 (1989) ("a State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure, any more than it can tell a party that its proposed communication to party members is unwise"). Further, merely because the Republican Party has chosen to do something that the state has required them to do does not mean that the voluntary action of the party becomes state action. *See Eu,* 109 S.Ct. at 1021 n. 15.

Second, the plaintiffs argue that the defendants act under color of state law in the same manner that the Texas Democratic Party and the Jaybird Association did in the so-called white primary discrimination cases, *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), and *Smith,* 321 U.S. 649, 64 S.Ct. 757. In *Terry,* the Supreme Court held that the "Jaybird Association," a private, all-white political club associated with the Democratic Party, so dominated the election process through its private primary that blacks were effectively disenfranchised. While there was no majority opinion, the important element to the case was that "[t]he Jaybird primary [had] become an integral part, indeed the only effective part, of the elective process that determines who shall rule and govern in the county." 345 U.S. at 469, 73 S.Ct. at 813 (Black, J., announcing the judgment and writing an opinion in which Douglas, J., and Burton, J., joined). In *Smith,* the Supreme Court struck down the Texas Democratic Party's whites-only primary voting policy. The Court reasoned that since the party primary was an integral

part of the election process then blacks must be allowed to vote in order to secure their constitutional right to ballot access.

These cases are easily distinguishable from the case before us. The Supreme Court did not assert that the Jaybirds had become a state actor for every purpose, only that the Jaybirds were state actors, acting under color of state law insofar as they had been assigned an "integral part" in the election process, a governmental function. Other courts facing this question have reached similar conclusions.

> The primary election cases do not hold that a political party is part of the state, or that any action by a political party other than conducting an election is state action.... The primary election cases merely hold that conducting an election is a governmental function and constitutes state action, no matter who actually conducts the election.

*California Republican Party v. Mercier*, 652 F.Supp. 928, 934 (C.D.Cal.1986).

In this case there is no evidence in the record and no explanation by the plaintiffs of how the ward chairmen play an integral part in the electoral process, as opposed to the purely internal affairs of the party. Absent some credible allegation that ward chairmen engage in a governmental function, the Republican Party is not subject to suit under section 1983 for irregularities in its internal ward chairmen elections. *Accord Lynch v. Torquato*, 343 F.2d 370, 372 (3d Cir.1965) ("the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action"); *Mercier*, 652 F.Supp. at 934; *McMenamin v. Philadelphia County Democratic Executive Committee*, 405 F.Supp. 998, 1003 (E.D.Pa.1975) ("the filling of [a party office] is not state action or action under color of state law"); *see also Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 33 (1st Cir.1987) (political candidate has no right of access to political party's presidential candidate forum since "in holding the forum, the Party

was not engaged in governmental activity") (distinguishing *Terry v. Adams*).

### III.

Having found that the plaintiffs' section 1983 claim is groundless, we must accordingly deny their request for attorneys' fees under section 1988, and AFFIRM the judgment of the District Court.