**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Lorain Cty. Democratic Party Executive Commt. v. LaRose*, Slip Opinion No. 2021-Ohio-1144.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1144

THE STATE EX REL. LORAIN COUNTY DEMOCRATIC PARTY EXECUTIVE COMMITTEE *v*. LAROSE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Lorain Cty. Democratic Party Executive Commt. v. LaRose*, Slip Opinion No. 2021-Ohio-1144.]**

*Mandamus—Elections—Action to compel secretary of state to appoint county political party's recommended qualified elector to the county election board—R.C. 3501.07—Secretary of state did not abuse his discretion in rejecting party's recommendation—Writ denied.*

(No. 2021-0326—Submitted March 31, 2021—Decided April 5, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, the Lorain County Democratic Party Executive Committee, seeks a writ of mandamus compelling respondent,

Secretary of State Frank LaRose, to appoint Sharon Sweda to the Lorain County Board of Elections. We deny the writ.

**Background**

{¶ 2} Sweda has been either a licensed real-estate broker or licensed title agent in Ohio for more than 30 years. In that time, she has not had a license suspended or revoked and had not been disciplined. From February 2019 to December 2020, she served on the Lorain County Board of Commissioners, but she lost her reelection bid. Sweda is a qualified elector in Lorain County. On January 31, 2021, the committee voted to recommend Sweda for appointment to the Lorain County Board of Elections, for a full term commencing March 1, 2021.

{¶ 3} On February 9, while reviewing the board's recommendation, LaRose's office received a packet of documents in the mail from an anonymous sender. In the secretary's view, the documents indicated that Sweda had used her county-commissioner e-mail address to conduct campaign activities. For example, on August 19, 2020, Barb McCann, an account executive at WEOL radio, sent an e-mail to Sweda offering advertising rates for her campaign. Sweda responded the next day, from her county e-mail account, inquiring, "What is the cost for my 15-second video? I am interested in doing the 10 week schedule." Sweda e-mailed McCann two more times that day to discuss campaign advertising, asking in the second message, "Do you want to draft the agreement?"

{¶ 4} The packet also contained examples of Sweda using her county e-mail address to engage in political activity that was not directly related to her campaign. Among these was an e-mail announcement for a fundraising event in support of Zach Stepp, a candidate for state representative, that was sent to ssweda@loraincounty.us on January 19, 2020. One could conclude from the e-mail chain that Sweda replied from that same account, "Please rsvp for me!" The e-mail address also appears on a message Sweda sent to offer campaign signs and to praise a volunteer and thank those who were "pulling together to turn Lorain County dark blue in November!!!"

{¶ 5} After reviewing the information in the packet, LaRose investigated further and obtained a letter from the Ohio auditor to Sweda dated October 20, 2020. In that letter, the auditor wrote that "[i]nformation we have been provided suggests that you are utilizing your Lorain County email address in furtherance of your reelection campaign." The auditor made clear that his office had "not confirmed the accuracy of these allegations" but advised Sweda that if the allegations were accurate, she needed to cease and desist immediately.

{¶ 6} LaRose also found an October 2, 2020 article in the Chronicle-Telegram newspaper that reported the allegations against Sweda and her response.

> Sweda said she didn't originate any of the emails provided to the newspaper. Since the issue came up, she has taken steps to change how she handles email to keep a line of separation, she said.
>
> "Since I've been working remotely, I have seven emails that go into my phone," she said. "I'm astute about returning emails quickly and promptly."
>
> * * *
>
> "My error was, in my haste to respond quickly, I did not go to the screen where it pops out" each individual email account, Sweda said. "It's a handful of emails . . . There were no county secrets divulged to anybody and given a COVID environment, I'd be surprised if it wasn't even more of a problem (for others working remotely)."
>
> After the issue was realized, Sweda said she has taken additional precautions to not use her county email for campaign or personal purposes.
>
> She "circulated immediately" a message to all the contacts who reach out to her through her county email, explaining that her

county email is not to be used to contact her for any private issues, Sweda said.

"I respond a little slower now and I take double precautions so I'm sure I'm not responding through an improper one," she said.

{¶ 7} Finally, LaRose received an e-mail message from someone identifying himself as "John Gall." Gall expressed alarm about Sweda's use of her county e-mail and other rumors he had heard.

{¶ 8} On March 3, 2021, LaRose rejected the committee's recommendation. Based on "all the information available to him," LaRose concluded that Sweda had not demonstrated "the judgment or adequate level of integrity necessary to ensure voter confidence." His written rejection specifically mentioned Sweda's use of her official Lorain County e-mail account in furtherance of her bid for reelection as well as allegations that she may have directed subordinates to directly or indirectly campaign for her while on county time.

{¶ 9} On March 12, 2021, the committee commenced this expedited action for a writ of mandamus.

**Analysis**

{¶ 10} Each county in Ohio has a board of elections consisting of four qualified electors from that county. R.C. 3501.06(A). Every odd-numbered year, the secretary of state is required to appoint two members to each county board for four-year terms commencing March 1. R.C. 3501.06(B)(2). One appointment must be made from each of the two political parties receiving the highest number of votes for governor at the most recent election. R.C. 3501.06(C). Therefore, in 2021, one appointee must be a Republican and one a Democrat.

{¶ 11} Although the secretary of state has the power of appointment, the county executive committees for the two political parties are permitted to recommend qualified electors for appointment. R.C. 3501.07. If a timely recommendation is

4

made, the secretary "shall" appoint the recommended elector unless the secretary "has reason to believe that the elector would not be a competent member" of the board. *Id.*

{¶ 12} When the secretary refuses to appoint an elector recommended by a county executive committee, the committee has a choice: it may either recommend another elector or it may seek a writ of mandamus in this court to compel the secretary to appoint the committee's first recommendation. R.C. 3501.07. In the mandamus action, "the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation." *Id.*

{¶ 13} In order to prevail, the committee must establish, by clear and convincing evidence, a clear legal right to have Sweda appointed to the board and a clear duty on the part of LaRose to do so.[1] *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. R.C. 3501.07 gives the secretary of state "broad discretion in determining whether recommended appointees are competent to be members of boards of elections." *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown*, 39 Ohio St.2d 157, 160, 314 N.E.2d 376 (1974). To meet the mandamus standard, the committee must show that LaRose abused his discretion. *Id.* at 161.

{¶ 14} It is an abuse of discretion for the secretary to reject a recommendation based on rumors and suspicion. *State ex rel. Cuyahoga Cty. Republican Party Executive Commt. v. Taft*, 67 Ohio St.3d 1, 2, 615 N.E.2d 615 (1993). The committee contends that LaRose acted wholly on the basis of rumor, innuendo, and hearsay and therefore that his decision was illegitimate.

---

1. Because the statute expressly authorizes mandamus as a remedy, the committee is not required to demonstrate that it lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83 (1994), *overruled on other grounds*, *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598.

**{¶ 15}** For example, the committee dismisses the Chronicle-Telegram article because, in the committee's reading, the article merely recites accusations against Sweda made by a political opponent. But the article contains more than accusations; it also quotes Sweda tacitly admitting that she misused the e-mail account. The committee argues that these portions of the article are inadmissible hearsay, citing *State ex rel. Citizens for Responsible Green Govt. v. Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 18, fn. 2, for the proposition that an alleged statement by a party opponent quoted in a newspaper is inadmissible hearsay.

**{¶ 16}** But the issue in *Citizens for Responsible Green Govt.* was whether hearsay evidence was admissible in a court proceeding. Although the secretary must have a factual basis for rejecting a recommended appointee, we have never held that he may consider only material that would be admissible under the Rules of Evidence. To the contrary, in *State ex rel. Lawrence Cty. Republican Party Executive Commt. v. Brunner*, 119 Ohio St.3d 92, 2008-Ohio-3753, 892 N.E.2d 428, we accepted the content of a local newspaper article as a valid piece of evidence for the secretary to use in reaching a decision. *Id*. at ¶ 8.

**{¶ 17}** Next the committee asserts that even if the article is valid evidence, the article actually exonerates Sweda because R.C. 9.03(D), the statute cited by the secretary, requires a *knowing* misuse of public funds, and Sweda stated in the article that her use of the county e-mail account was unintentional. However, the secretary is not required to accept her self-serving explanation for her actions. *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown*, 39 Ohio St.2d at 160, 314 N.E.2d 376, (noting the secretary's "broad" discretion to determine whether a recommended appointee is competent to serve).

**{¶ 18}** With respect to the e-mail chains that the secretary considered, the committee characterizes them as rumor and innuendo because they were sent to the secretary by an anonymous person. The fact that the sender's identity and motives are unknown might affect the weight that the secretary, in his discretion, gives to the

e-mails, but it does not require him to disregard the information they contain. The committee, citing Evid.R. 1005, objects that the e-mails are unauthenticated. But here again, we do not require the secretary to hew to the Rules of Evidence. It is reasonable for him, in the exercise of his discretion, to rely on what appear on their face to be genuine e-mails.

{¶ 19} The committee admits that one e-mail thread, the discussion with Barb McCann about radio advertisements, came from Sweda's county e-mail address but insists that the source of the remaining messages cannot be determined. Indeed, there are e-mails in the packet that show the sender only as "Sharon Sweda" without indicating the e-mail address she was using. But many of the e-mails do indicate on their face that they originated from Sweda's county account.

{¶ 20} We hold, based on the e-mails and the newspaper account of Sweda's statements, that the committee has failed to prove that LaRose abused his discretion when he rejected the committee's recommendation.[2] We reject the committee's comparison of this case to *State ex rel. Cuyahoga County Republican Party Executive Commt. v. Taft*, 67 Ohio St.3d 1, 615 N.E.2d 615, in which we granted a writ of mandamus because the secretary rejected an appointee based on rumors and accusations that he had violated campaign-finance laws. In *Taft*, the secretary relied on an article that *accused* the appointee of wrongful conduct, whereas LaRose is relying on an article in which Sweda tacitly *admits* the wrongful conduct.

{¶ 21} In addition, we note that R.C. 3501.07 imposes on the committee the burden to prove "the qualifications of the person so recommended." The evidence in the record shows that Sweda was a businesswoman and, for a brief time, a county officeholder. But the committee makes no argument about these qualifications and how they support Sweda's competency as a potential board of elections member. The committee repeatedly notes that Sweda has never been *convicted* of misusing

---

2. Because we reach this conclusion, it is unnecessary to opine on the evidentiary value, if any, of the letters from John Gall and the auditor's office.

public funds. But that is not the standard for whether a recommended person is qualified in the secretary's eyes for appointment. *See State ex rel. Lawrence Cty. Republican Party Executive Commt. v. Brunner*, 119 Ohio St.3d 92, 2008-Ohio-3753, 892 N.E.2d 428, at ¶ 14 (finding no abuse of discretion when secretary rejected appointee based on reports of potentially criminal conduct, even though appointee had not been charged or convicted). Thus, the committee has failed to meet its burden of proof in a second critical respect. Having failed to meet its burden of proof, the committee has not demonstrated its entitlement to a writ of mandamus to compel the secretary to appoint its nominee to the Lorain County Board of Elections.

### Conclusion

{¶ 22} For the reasons discussed above, we deny the request for a writ of mandamus.

Writ denied.

O'CONNOR, C.J., and KENNEDY, STEWART, and BRUNNER, JJ., concur.

FISCHER and DEWINE, JJ., concur in judgment only.

DONNELLY, J., dissents, with an opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 23} Pursuant to R.C. 3501.07, the secretary of state "shall appoint" to a county board of elections a qualified elector who has been recommended by a county party's executive committee to fill a vacancy on the board, "unless the secretary of state has reason to believe that the elector would not be a competent member of such board."

{¶ 24} In this case, respondent, Secretary of State Frank LaRose, rejected relator Lorain County Democratic Party Executive Committee's recommendation for Sharon Sweda to serve on the Lorain County Board of Elections after receiving (1) a packet of unauthenticated documents sent anonymously showing Sweda's

purported misuse of her county e-mail account for political campaigning, (2) an October 2, 2020 newspaper article reporting on similar allegations and Sweda's explanation and corrective action, (3) an October 20, 2020 letter from the Ohio auditor acknowledging that office's receipt of similar allegations and expressly reciting that the auditor had not confirmed the accuracy of the allegations, and (4) an unsolicited e-mail from someone identifying himself as "John Gall" who made similar and other allegations against Sweda. That smear campaign was apparently enough for the secretary of state. Without even bothering to contact Sweda or providing her an opportunity to respond to these allegations, the secretary of state refused to appoint her to fill the vacancy on the board. In my opinion, the reasons advanced by the secretary of state for denying Sweda's appointment utterly fail to withstand factual scrutiny, much less show that she would not be a competent member of the county board.

> R.C. 3501.07 requires a *reasonable* belief that a person is incompetent to serve on the elections board. *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 118 Ohio St.3d 515, 2008-Ohio-2824, 890 N.E.2d 888, ¶ 78 (Cupp, J., concurring). It is an abuse of discretion for the secretary to reject a recommendation based on rumors and suspicion. *State ex rel. Cuyahoga Cty. Democratic Party Executive Commt. v. Taft*, 67 Ohio St.3d 1, 2, 615 N.E.2d 615 (1993).

(Emphasis sic.) *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Husted*, 144 Ohio St.3d 352, 2015-Ohio-3948, 43 N.E.3d 411, ¶ 27.

{¶ 25} Contrary to that case authority, today's opinion upholds the secretary's decision based on unadulterated rumor and suspicion. And contrary to what is stated in today's opinion, Sweda did not admit to intentional wrongdoing

for any misuse of her county e-mail. Remarkably, the opinion declares, at ¶ 17, that the secretary of state "is not required to accept [Sweda's] self-serving explanation for her actions"—an explanation that was reported by others, since the secretary did not ask Sweda any questions directly—while sanctioning without question the secretary's reliance on no less self-serving rumors and accusations contained in anonymous correspondence. The majority suggests that the secretary is not a court that is bound by rules requiring competent admissible evidence, yet here we are—the court of last resort—seemingly content to ignore the utterly unsubstantiated reasons proffered by the secretary.

**{¶ 26}** Because the secretary's reasons do not withstand factual scrutiny, the secretary had no legitimate reason to reject the recommendation. Rejecting the recommendation for no legitimate reason is an abuse of discretion. I dissent, and I would grant the requested writ of mandamus.

_____

McTigue & Colombo, L.L.C., Derek S. Clinger, Donald J. McTigue, J. Corey Colombo, and Ben F.C. Wallace, for relator.

Dave Yost, Attorney General, and Ann Yackshaw and Iris Jin, Assistant Attorneys General, for respondent.

_____