[Cite as *State ex rel. Ames v. Geauga Cty. Republican Cent. & Executive Commts.*, 2021-Ohio-2888.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

STATE OF OHIO ex rel.
BRIAN M. AMES,

      Relator-Appellant,

  - v -

GEAUGA COUNTY REPUBLICAN
CENTRAL AND EXECUTIVE
COMMITTEES, et al.,

      Respondents-Appellees.

CASE NO. 2021-G-0004

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2021 M 000093

## O P I N I O N

Decided: August 23, 2021
Judgment: Affirmed

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator-Appellant).

*Nancy C. Schuster*, Schuster & Simmons Co., LPA, Bevelin House, 2913 Clinton Avenue, Cleveland, OH 44113 (For Respondents-Appellees).

MARY JANE TRAPP, P.J.

{¶1}    Appellant, Brian Ames ("Mr. Ames"), appeals the judgment of the Geauga County Court of Common Pleas dismissing his complaint against appellees, Geauga County Republican Central and Executive Committees and Nancy B. McArthur in her official capacity as chairman (collectively, the "appellees"), for failure to state a claim upon which relief can be granted.

{¶2} Mr. Ames's complaint alleged that the appellees violated R.C. 121.22, i.e., the Open Meetings Act (the "OMA"), when he was denied access to a meeting at which the committees selected a qualified elector to fill the vacancy of a Republican member of the Geauga County Board of Elections.

{¶3} Mr. Ames asserts one assignment of error, contending that the trial court erred by granting the appellees' motion to dismiss for the following reasons: (1) pursuant to precedent from the Supreme Court of the United States, county central and executive committees of a political party are "external intermediaries" created to serve public policy and are subject to the OMA at all times; (2) R.C. 3501.07 confers upon a county executive committee more than the power to make and file a recommendation for an appointment to the county board of elections; and (3) the appointment to fill a vacancy in a county board of elections is not an internal affair of a county political party.

{¶4} After a careful review of the record and pertinent law, we find that Mr. Ames can prove no set of facts entitling him to relief for the following reasons:

{¶5} (1) The Supreme Court decision that Mr. Ames cites does not establish that county central and executive committees are "public bodies" that are subject to the OMA at all times.

{¶6} (2) Since R.C. 3501.07 only applies to a county executive committee, not a county central committee, the statute does not provide a legal basis for determining that a county central committee is a "public body" that is subject to the OMA.

{¶7} (3) While R.C. 3501.07 authorizes a county executive committee to recommend an elector for appointment, the statute does not delegate to the county executive committee "one of the sovereign functions of government, to be exercised for

2

the public benefit." The "sovereign function" at issue is the power of appointment, which the General Assembly expressly granted to the secretary of state.

{¶8} Thus, the Geauga County Court of Common Pleas properly dismissed Mr. Ames's complaint, and we affirm its judgment.

### Substantive and Procedural History

{¶9} In February 2021, Mr. Ames, as "relator," filed a "verified complaint in mandamus, declaratory judgment, and injunction for enforcement of R.C. 121.22," naming as "respondents" the "Geauga County Republican Central and Executive Committees"[1] and "Nancy B. McArthur in her official capacity as chairman."

{¶10} Mr. Ames alleged that the General Assembly, by enacting R.C. 3501.07, has empowered the executive committee to make and file a recommendation with the Ohio Secretary of State for the appointment of a qualified elector to fill the vacancy of a Republican member of the Geauga County Board of Elections. On February 6, 2021, the committees held a meeting for that purpose in anticipation of the expiration of a Republican member's term on March 1. Chairman McArthur denied Mr. Ames and others entrance to the meeting, despite Mr. Ames informing her that the meeting was required by law to be an open meeting.

{¶11} Mr. Ames alleged that the committees are "statutorily created public bodies for the purpose of performing a statutory function"; the OMA applies to the meeting; and the conduct of the meeting was in violation of the OMA. He sought a finding that the appellees committed a violation of the OMA; a mandatory injunction pursuant to R.C.

---

1. In its filings in the trial court and in this court, the committees refer to themselves, respectively, as the Geauga County Republican *Party* Central and Executive Committees. A review of Mr. Ames's memorandum in opposition indicates his omission of the word "party" was intentional. However, this apparent disagreement is not relevant to the issue on appeal.

3

121.22(I)(1); a civil forfeiture of $500 pursuant to R.C. 121.22(I)(2)(a); and costs and reasonable attorney fees pursuant to R.C. 121.22(I)(2)(a).

{¶12} The appellees appeared through counsel and filed a motion to dismiss pursuant to Civ.R. 12(B)(6), contending that the committees were not "public bodies" pursuant to the OMA when the county executive committee met pursuant to R.C. 3501.07 to make a recommendation for an appointment to the county board of elections. Mr. Ames filed a memorandum in opposition.

{¶13} In March 2021, the trial court filed an order finding "beyond doubt" that Mr. Ames can prove no set of facts that would warrant the requested relief and dismissed Mr. Ames's complaint with prejudice.

{¶14} Mr. Ames appealed and presents the following assignment of error:

{¶15} "The trial court erred by granting Respondents' Motion to Dismiss."

{¶16} Mr. Ames also presents the following five issues for review and argument:

{¶17} "[1.] Are the county central and executive committees created by R.C. 3517.03 external intermediaries between the state and a county political party or internal structures imposed upon the party?

{¶18} "[2.] Did the General Assembly by the enactment of R.C. 3501.07 confer upon a county executive committee more than the making and filing of a recommendation with the secretary of state for the appointment of a qualified elector to fill a vacancy in the respective county board of elections?

{¶19} "[3.] Is the appointment of a qualified elector to fill a vacancy in a county board of elections an internal affair of a county political party?

{¶20} "[4.] Is this Court's ruling in *Jones v. Geauga Cty Republican Party Cent. Commt.*, 2017-Ohio-2930 applicable to this case?

{¶21} "[5.] Is the Sixth Circuit's ruling in *Banchy v. Republican Party of Hamilton County* (6th Cir. 1990), 898 F.2d 1192 applicable to this case?"

**Standard of Review**

{¶22} An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶23} A motion to dismiss for failure to state a claim is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In resolving a Civ.R. 12(B)(6) motion, courts are confined to the allegations in the complaint and cannot consider outside materials. *State ex rel. Baran v. Fuerst*, 55 Ohio St.3d 94, 97, 563 N.E.2d 713 (1990). In construing the complaint, a court must presume that all factual allegations are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). However, a court should not accept as true any unsupported legal conclusions in the complaint. *See id.* at 193.

{¶24} A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt from the face of the complaint that the plaintiff can prove no set of facts entitling him to recover. *Cleveland Elec. Illuminating Co. v. PUCO*, 76 Ohio St.3d 521, 524, 668 N.E.2d 889 (1996). If, after considering the complaint accordingly, there is no set of facts consistent with the appellant's allegations that would permit recovery, the

5

judgment of dismissal will be affirmed. *Grybosky v. Ohio Civ. Rights Comm.*, 11th Dist. Ashtabula No. 2010-A-0047, 2011-Ohio-6843, ¶ 15.

## The OMA

{¶25} The determinative issue in this case is a legal one: whether a major political party's county central and executive committees are "public bodies" that are subject to the OMA.

{¶26} The OMA begins with a pronouncement: "'This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law.'" *State ex rel. More Bratenahl v. Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, 136 N.E.3d 447, ¶ 8, quoting R.C. 121.22(A). "It directs that '[a]ll *meetings* of any *public body* are declared to be public meetings open to the public at all times.'" (Emphasis added.) *Id.*, quoting R.C. 121.22(C). It also provides that "'[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body.'" *Id.*, quoting R.C. 121.22(H). It authorizes "[a]ny person" to "bring an action to enforce" the OMA. R.C. 121.22(I)(1).

{¶27} The term "public body" is defined, in relevant part, as any of the following:

{¶28} "(a) Any board, commission, committee, council, or similar decision-making body of a *state* agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any *county*, *township*, *municipal corporation*, *school district*, or other political subdivision or *local public* institution;

6

Case No. 2021-G-0004

**{¶29}** "(b) Any committee or subcommittee of a body described in division (B)(1)(a) of this section * * *." (Emphasis added.) R.C. 121.22(B)(1)(a) and (b).

**{¶30}** The term "meeting" is defined as "any prearranged discussion of the *public business* of the *public body* by a majority of its members." (Emphasis added.) R.C. 121.22(B)(2).

**{¶31}** The term "public business" is not defined in the OMA. The Supreme Court of Ohio has defined it as "the business of the government," "matters within the purview of a public body's duties, functions and jurisdiction," and "those matters over which the public governmental body has supervision, control, jurisdiction or advisory power." *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.3d 1234, ¶ 21.

### External Intermediaries

**{¶32}** In his first issue for review and argument, Mr. Ames contends that county central and executive committees are "external intermediaries" that were created to serve public policy. As such, they are subject to the OMA "at all times."

### *Legal Principles*

**{¶33}** R.C. Chapter 3517 addresses matters relating to campaigns and political parties. R.C. 3517.01 governs the formation and existence of a political party for purposes of R.C. Title 35 (Elections). R.C. 3517.02 and R.C. 3517.03 address "controlling committees" of "major political parties."

**{¶34}** R.C. 3517.03 provides that "[t]he controlling committees of each major political party or organization shall be [1] a state central committee consisting of two members, one a man and one a woman, representing either each congressional district in the state or each senatorial district in the state, as the outgoing committee determines;

7

[2] *a county central committee* consisting of one member from each election precinct in the county, or of one member from each ward in each city and from each township in the county, as the outgoing committee determines; and [3] such district, city, township, or other committees as the rules of the party provide." (Emphasis added.) R.C. 3517.02 provides that "[a]ll members of controlling committees of a major political party shall be elected by direct vote of the members of the party * * *."

{¶35} R.C. 3517.03 provides that "[e]ach major party controlling committee shall elect an *executive committee* that shall have the powers granted to it by the party controlling committee, and provided to it by law." (Emphasis added.)

{¶36} Courts have determined that political parties are not governmental entities. The Supreme Court of Ohio has characterized political parties as "basically voluntary associations of persons who act together principally for party and community purposes." *State ex rel. Cain v. Kay*, 38 Ohio St.2d 15, 18, 309 N.E.2d 860 (1974). As the Eighth District Court of Appeals has aptly explained, "[a]lthough political parties have certain public responsibilities, they are basically voluntary associations made up of persons who act together for various community and party purposes and who are governed in most respects by their own rules and usages." *State ex rel. McCurdy v. DeMaioribus*, 9 Ohio App.2d 280, 281, 224 N.E.2d 353 (8th Dist.1967).

{¶37} Since a political party is not a governmental entity, members of a political party's county central and executive committees are generally not considered public officials. *See McCurdy* at 281-282 ("[I]t is the general rule in the United States that party committeemen do not hold a 'public office'-although the Legislature may, by statute, regulate the election and conduct of political committees"); 2002 Ohio Atty.Gen.Ops. No.

8

2002-038, *2 ("[A]s a general rule, the members of these committees are not considered officers or employees of a governmental entity, but rather officers of the political party that elects or appoints them").

### *Analysis*

**{¶38}** In support of his position that county committees are "public bodies" at all times, Mr. Ames relies on the Supreme Court of the United States' decision in *Eu v. San Francisco Cty. Democratic Cent. Commt.*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).

**{¶39}** In *Eu*, the Court determined that California's statutory restrictions on the "organization and composition of official governing bodies" of political parties unconstitutionally burdened the associational rights of the parties and their members. *Id.* at 229-233. The restrictions at issue "dictate[d] the size and composition of the state central committees; set forth rules governing the selection and removal of committee members; fix[ed] the maximum term of office for the chair of the state central committee; require[d] that the chair rotate between residents of northern and southern California; specif[ied] the time and place of committee meetings; and limit[ed] the dues parties may impose on members." (Footnotes omitted.) *Id.* at 218-219. Violations of the provisions were criminal offenses punishable by fine and imprisonment. *Id.* at 219. The Supreme Court determined that these statutory restrictions improperly limited "a political party's discretion in how to organize itself, conduct its affairs, and select its leaders." *Id.* at 230.

**{¶40}** Mr. Ames argues that pursuant to *Eu,* the Ohio General Assembly does not possess constitutional authority to impose a particular internal structure upon a political party. Therefore, for R.C. 3517.03 to survive constitutional scrutiny, this court must

9

construe it as involving the General Assembly's creation of "an external intermediary body" between the major state and county political parties. Since county committees were "created by statute to serve public policy," they are subject to the OMA "at all times."

{¶41} We note that Mr. Ames did not allege in his complaint that R.C. 3517.03 is unconstitutional, and there is no indication that he served a copy of his complaint on the Ohio Attorney General. R.C. 2721.12(A) provides, in relevant part, that "a declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding. * * * [I]f any statute * * * is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard." *See also Cicco v. Stockmaster*, 89 Ohio St.3d 95, 97, 728 N.E.2d 1066 (2000), syllabus (involving the former version of the statute).

{¶42} It is also questionable whether Mr. Ames has standing to challenge the statute's constitutionality, as he does not allege that he is a member of the Geauga County Republican Party or a member of the county central or executive committees. *See State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999) ("In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury").

{¶43} Even if Mr. Ames had properly raised a constitutional issue, we cannot reach Mr. Ames's desired outcome.

10

Case No. 2021-G-0004

{¶44} When examining a statute, a court must afford the act a constitutional construction "if one is *reasonably* available." (Emphasis added.) *United Air Lines, Inc. v. Porterfield*, 28 Ohio St.2d 97, 100, 276 N.E.2d 629 (1971); *State v. May*, 11th Dist. Ashtabula No. 2005-A-0011, 2006-Ohio-3406, ¶ 19.

{¶45} Mr. Ames cites no legal authority supporting, much less compelling, his proposed "constitutional" construction of the statute. Determining that the county committees of the major political parties in this state are "external intermediary bodies" that "serve public policy" is not reasonably supported by the existing statutory language. Rather, Mr. Ames is asking this court to rewrite the statute, which no court has authority to do.

{¶46} Accordingly, the *Eu* decision does establish that county central and executive committees are "public bodies" that are subject to the OMA "at all times."

### Power of Appointment

{¶47} In his second issue, Mr. Ames contends that R.C. 3501.07 confers upon a county executive committee more than a right to recommend an appointment to the county board of elections. In his third issue, Mr. Ames contends that this statutory right does not involve an "internal affair" of a county political party.

### *R.C. 3501.07*

{¶48} R.C. 3501.07 is part of Title 35 (Elections), Chapter 3501 (Election Procedure; Election Officials). It provides, in relevant part, as follows:

{¶49} "At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections, or within fifteen days after a vacancy occurs in the board, *the county executive committee* of the major

11

Case No. 2021-G-0004

political party entitled to the appointment *may make and file a recommendation* with the secretary of state for the appointment of a qualified elector. The secretary of state shall appoint such elector, unless the secretary of state has reason to believe that the elector would not be a competent member of such board. In such cases the secretary of state shall so state in writing to the chairperson of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation. If no such recommendation is made, the secretary of state shall make the appointment." (Emphasis added.)

### *Legal Principles*

{¶50} In *State ex rel. Hayes v. Jennings*, 173 Ohio St. 370, 182 N.E.2d 546 (1962), the Supreme Court of Ohio found an exception to the general understanding that a county central committee of a political party is not a public office.

{¶51} In *Hayes*, the court considered an action in quo warranto by a relator seeking the pro tempore clerk of courts to surrender the office to allow the relator to take the office. *Id.* at 371-372. The relator challenged the constitutional authority of the General Assembly to confer on the county central committee of a political party the authority to appoint an individual for a vacancy in a county office pursuant to R.C. 305.02. *Id.* at 372.

{¶52} R.C. 305.02(B) provided, in relevant part, that "[i]f a vacancy occurs from any cause in any of the offices named is division (A) of this section [county commissioner,

12

prosecuting attorney, county auditor, county treasurer, clerk of the court of common pleas, sheriff, county recorder, county engineer, or coroner], the county central committee of the political party with which the last occupant of the office was affiliated shall appoint a person to hold the office and to perform the duties thereof until a successor is elected and has qualified.  Appointments made under this division of this section shall be certified by the appointing county central committee to the county board of elections and to the secretary of state, and the persons so appointed and certified shall be entitled to all remuneration provided by law for the offices to which they are appointed."[2]

{¶53}  The court determined that the General Assembly's delegation of power did not violate the Ohio Constitution.  *Hayes* at syllabus.  The court further determined that "the power conferred by [R.C. 305.02] upon central committeemen makes them public officers" and makes the county central committee a "public office."  *Id.* at 374, paragraph one of the syllabus.

{¶54}  In *Cain, supra*, the court subsequently clarified the extent of its holding in *Hayes*.  In that case, the court considered a quo warranto action where the petitioner challenged the respondent's right and title to the office of chairman of the state central committee of a minor political party.  *Id.* at 16.  The court stated as follows:

{¶55}  "In Hayes, it was the *delegation by statute of one of the sovereign functions of government, to be exercised for the public benefit, to the county central committeemen* that outweighed the traditional reluctance of the court to interfere in the internal affairs of political parties.  Political parties are basically voluntary associations of persons who act together principally for party and community purposes.  Courts should defer to the

---

2. The current version of R.C. 305.42 is nearly identical, but its provisions have been separated into lettered paragraphs.

Case No. 2021-G-0004

appropriate party tribunals established by the members for the resolution of internal disputes of the party. For purposes of quo warranto, *it is only where party officers assume duties affecting activities beyond the sphere of the internal affairs of the party and exercise official powers that are part of the sovereign functions of the state, properly exercisable for the public benefit*, that the courts will intercede." (Emphasis added.) *Id.* at 18-19.

{¶56} More recently, in *Banchy v. Republican Party of Hamilton Cty.*, 898 F.2d 1192 (6th Cir.1990), the Sixth Circuit addressed *Hayes* in determining whether the election of political party officers arguably constitutes state action under 42 U.S.C. 1983. The plaintiffs argued that the "special powers" that the state granted to the county central committees of major political parties raised a "colorable argument that all the actions of a committee constitute state action." (Emphasis added.) *Id.* at 1194. The court disagreed, stating as follows:

{¶57} "While section 305.02 delegates to the central committees of a state party the power to appoint certain county officials when a vacancy occurs, *this does not mean that all actions of a central committee constitute state action. When performing the narrow duties assigned to it under section 305.02, the Central Committee of the Republican Party may well be engaging in state action. State ex rel. Hayes v. Jennings*, 173 Ohio St. 370, 374, 19 Ohio Op. 2d 314, 182 N.E.2d 546 (1962) ('[t]he power conferred by Section 305.02, Revised Code, upon central committeemen makes them public officers'); *see also Smith v. Allwright*, 321 U.S. 649, 663, 64 S.Ct. 757, 88 L.Ed. 987 (1944) ('the party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party'). When engaging in party activities, such as electing ward chairmen, *distinct from*

14

*their official governmental duties, the members of the Central Committee do not continue to act under color of state law merely because they have some governmental duties. There must be some allegation that the activities directly influence the governmental duties.*" (Emphasis added.) *Id.* at 1195.

{¶58} Although not controlling authority, the Ohio Attorney General has addressed the applicability of the OMA to a county central committee of a political party. *See* 1980 Ohio Atty.Gen.Ops. No. 80-083. The attorney general concluded that the county central committee must comply with the OMA when it holds a meeting pursuant to R.C. 305.02 to fill vacancies in county offices, since "[i]t is the sovereign power bestowed upon the county central committee by R.C. 305.02 that makes the committee members public officers and the committee a public body." *Id.* at *5. "The exercise of such sovereign power through a meeting held pursuant to R.C. 305.02 must necessarily be considered public business." *Id.*

{¶59} However, the attorney general concluded that the OMA does not apply to a meeting of a county central committee when the purpose is to conduct internal party business unrelated to its duties of making appointments to vacant offices under R.C. 305.02. *Id.* "The conducting of internal party business is not considered the exercise of a sovereign function of government, and thus cannot be considered 'public business' for purposes of R.C. 121.22(B)(2)." *Id.*

{¶60} In *Jones v. Geauga Cty. Republican Party Cent. Commt.*, 2017-Ohio-2930, 82 N.E.3d 16 (11th Dist.), this court considered whether the OMA applied to a meeting of the Geauga County Republican Party Central Committee to amend its internal bylaws and to select and appoint new members to the local central committee. *Id.* at ¶ 3, ¶ 35.

15

Case No. 2021-G-0004

**{¶61}** We recognized that under the circumstances presented in *Hayes*, "R.C. 305.02 *transmutes* the members of a county central committee of a political party to 'public officers.'" (Emphasis added.) *Id.* at ¶ 26. However, based on our review of *Cain* and *Banchy*, we determined that "a central committee of a local political party is only comprised of 'public officers' when the committee is actually undertaking its limited, governmental duties." *Id.* at ¶ 28. We concluded that "although members of a central committee of a political party are public officers upon acting under the authority granted in R.C. 305.02 in filling vacanc[ies] in county offices, these same committee members do not constitute public officials engaged in public meetings when they are addressing the internal affairs of the political party." *Id.* at ¶ 35.[3]

### *Analysis*

**{¶62}** Mr. Ames essentially argues that the authority R.C. 305.02 grants to a county central committee to fill county office vacancies is analogous to the authority R.C. 3501.07 grants to a county executive committee to recommend to the Ohio Secretary of State a qualified elector to fill a vacancy on the county board of election. In other words, R.C. 3501.07 *transmutes* the members of a county executive committee into public officers and makes them subject to the OMA. *See Jones* at ¶ 26. We do not agree.

**{¶63}** We note that R.C. 3501.07 only applies to a county executive committee, not a county central committee. Therefore, R.C. 3501.07 does not provide a basis for determining that a county central committee is a "public body" that is subject to the OMA.

---

3. In his fourth and fifth issues presented for review and argument, Mr. Ames requests that we disregard, respectively, this court's decision in *Jones* and the Sixth Circuit's decision in *Banchy* as inapplicable to the present case. As demonstrated herein, we find these authorities to be instructive to the issues in this case.

16

Case No. 2021-G-0004

{¶64} Further, while we acknowledge that the actions of a county executive committee pursuant R.C. 3501.07 do not involve "purely" internal party affairs as discussed in *Cain* and *Jones*, we do not construe R.C. 3501.07 as delegating to the county executive committee "one of the sovereign functions of government, to be exercised for the public benefit." *Cain* at 18.

{¶65} As in *Hayes*, the "sovereign function of government" involved in this case is the power of appointment pursuant to Article II, Section 27 of the Ohio Constitution, which states, in relevant part, that "[t]he election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution, or the constitution of the United States, shall be made in such manner as may be directed by law * * *." *See Hayes* at 372.

{¶66} In contrast to R.C. 305.02(B), which states that the county central committee "shall appoint" a person to fill vacancies in certain county offices, the General Assembly expressly granted to the secretary of state the power to appoint members of county boards of elections. *See State ex rel. Lorain Cty. Democratic Party Executive Commt. v. LaRose,* Slip Opinion No. 2021-Ohio-1144, ¶ 11 (noting that "the secretary of state has the power of appointment").

{¶67} Specifically, "[t]he secretary of state is the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in Title [35] of the Revised Code." R.C. 3501.04. Each county in Ohio has "a board of elections consisting of four qualified electors of the county, *who shall be appointed by the secretary of state, as the secretary's representatives.*" (Emphasis added.) R.C. 3501.06(A). "Beginning in 2017, on the first day of March in

17

odd-numbered years, *the secretary of state shall appoint* two of such board members for a term of four years. One of those board members shall be from the political party which cast the highest number of votes for the office of governor at the most recent regular state election, and the other shall be from the political party which cast the next highest number of votes for the office of governor at such election. Thereafter, *all appointments* shall be made on the first day of March in odd-numbered years for a term of four years." (Emphasis added.) R.C. 3501.06(B)(2). "All vacancies filled for unexpired terms and *all appointments* to new terms *shall be made from* the political party to which the vacating or outgoing member belonged, unless there is a third political party which cast a greater number of votes in the state at the most recent regular state election for the office of governor than did the party to which the retiring member belonged, in which event the vacancy shall be filled *from* such third party." (Emphasis added.) R.C. 3501.06(C).

{¶68} In contrast to R.C. 305.02(B), R.C. 3501.07 states that the county executive committee "*may* make and file a *recommendation* with the secretary of state for the *appointment* of a qualified elector. *The secretary of state shall appoint* such elector, unless the secretary of state has reason to believe that the elector would not be a competent member of such board." (Emphasis added.) *Id.* "[I]f no such recommendation is made, *the secretary of state shall make the appointment.*" (Emphasis added.) *Id.*

{¶69} Despite the foregoing statutory language, Mr. Ames contends that the county executive committee's statutory right to proceed in mandamus to compel the appointment of its recommended elector is determinative of the statute's meaning. We do not agree.

18

Case No. 2021-G-0004

**{¶70}** If the secretary of state determines that the recommended elector would not be a competent member, R.C. 3501.07 further provides that he or she "shall so state in writing to the chairperson of such county executive committee, with the reasons therefor." The county executive committee "may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation." *Id.*

**{¶71}** Contrary to Mr. Ames's insinuation, the secretary of state does not simply rubber-stamp the county executive committee's recommendation. According to the Supreme Court of Ohio, "R.C. 3501.07 gives the secretary of state 'broad discretion in determining whether recommended appointees are competent to be members of boards of elections.'" *LaRose, supra*, at ¶ 13, quoting *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown*, 39 Ohio St.2d 157, 160, 314 N.E.2d 376 (1974). "The general rule in regard to the issuance of a writ of mandamus to appointing authorities is that such authorities, vested with the power of appointment to office, are generally entitled to exercise judgment and discretion in the matter, and where that is the case courts in mandamus actions will only compel the appointing board or officer to proceed to exercise the power of appointment, and will not allow a writ of mandamus to control or override the decision made." *Brown* at 160. Thus, in order to prevail, the county executive committee "must establish, by clear and convincing evidence, a clear legal right to have [the recommended elector] appointed to the board and a clear duty on the part of [the secretary of state] to do so." *LaRose* at ¶ 13.

19

Case No. 2021-G-0004

{¶72} In fact, the Supreme Court has denied writs of mandamus in two recent cases where the secretary of state rejected the county executive committee's recommended elector. *See id.* and *State ex rel. Ashtabula Cty. Democratic Party Executive Commt. v. LaRose,* 160 Ohio St.3d 1442, 2020-Ohio-5061, 155 N.E.3d 949.

{¶73} While R.C. 3501.07 certainly gives the county executive committee an opportunity to provide meaningful input, the "sovereign function of government," i.e., the power of appointment, expressly lies with the secretary of state. Accordingly, R.C. 3501.07 does not make a county executive committee a "public body" that is subject to the OMA.

{¶74} Finally, since the committees in this case did not act as "public bodies" that were subject to the OMA, there is no legal basis for a claim under the OMA against Chairman McArthur.

{¶75} In sum, based on the allegations in Mr. Ames's complaint and the applicable law, Mr. Ames can prove no set of facts entitling him to relief. Therefore, the trial court properly dismissed Mr. Ames's complaint.

{¶76} Mr. Ames's sole assignment of error is without merit.

{¶77} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

20

Case No. 2021-G-0004