[Cite as *Ames v. Geauga Cty. Republican Cent. Commt.*, 2023-Ohio-3689.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| BRIAN M. AMES, | **CASE NO. 2022-G-0038** |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| GEAUGA COUNTY REPUBLICAN CENTRAL COMMITTEE, et al., | Trial Court No. 2022 M 000323 |
| Defendants-Appellees. | |

**O P I N I O N**

Decided: October 10, 2023
Judgment: Affirmed

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Plaintiff-Appellant).

*Nancy C. Schuster*, Schuster & Simmons Co., LPA, The Bevelin House, 2913 Clinton Avenue, Cleveland, OH 44113 (For Defendants-Appellees).

MARY JANE TRAPP, J.

{¶1} Plaintiff-appellant, Brian M. Ames ("Mr. Ames"), appeals the judgment of the Geauga County Court of Common Pleas dismissing his complaint against defendants-appellees, Geauga County Republican Central Committee ("the committee") and Nancy B. McArthur in her official capacity as chairman ("Ms. McArthur"), for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6).

{¶2} Mr. Ames' amended complaint alleged the committee and Ms. McArthur (collectively, "the appellees") violated R.C. 121.22, i.e., the Open Meetings Act (the

"OMA"), during the committee's June 2022 organizational meeting held pursuant to R.C. 3517.04.

{¶3} Mr. Ames asserts one assignment of error, contending the trial court erred by granting the appellees' motion to dismiss. After a careful review of the record and pertinent law, we agree with the trial court that Mr. Ames can prove no set of facts entitling him to relief. Based on binding legal precedent, the committee's election of officers pursuant to R.C. 3517.04 involved the internal affairs of the political party. Therefore, the committee's meeting was not subject to the OMA.

{¶4} Thus, we affirm the judgment of the Geauga County Court of Common Pleas.

**Procedural History**

{¶5} On June 9, 2022, Mr. Ames filed a complaint for declaratory judgment and injunctive relief against the appellees,[1] alleging violations of the OMA. The appellees filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The next day, Mr. Ames filed an amended complaint.

{¶6} Mr. Ames alleged the committee held a meeting on June 8, 2022, pursuant to R.C. 3517.04 during which it elected officers. According to Mr. Ames, the meeting was "conducted by a statutorily created public body for the purpose of performing a statutory function," and the OMA applied. Mr. Ames alleged the appellees violated the OMA because no vote was taken on a member-elect's motion to conduct the elections of officers by roll call vote; the elections of officers were conducted by secret ballot; and the

---

1. The committee refers to itself as the Geauga County Republican *Party* Central Committee. While it appears Mr. Ames' omission of the word "party" is intentional, this dispute is not relevant to the issues on appeal.

2

ballots were collected from members instead of members placing them in a ballot box. Mr. Ames sought a declaratory judgment finding the appellees violated the OMA and the election results are invalid; an injunction ordering the committee and its members to comply with the OMA; a civil forfeiture of $500; and an award of costs and reasonable attorney fees.

{¶7} The appellees filed an amended motion to dismiss pursuant to Civ.R. 12(B)(6), contending the committee is not a "public body" under the OMA and was not exercising a "sovereign governmental function" when it elected its officers pursuant to R.C. 3517.04. Mr. Ames filed a brief in opposition, arguing the "conduct" of the committee's organizational meeting under R.C. 3517.04 constitutes a "governmental function." The committee filed a reply.

{¶8} In September 2022, the trial court filed a judgment entry dismissing Mr. Ames' complaint with prejudice. The trial court found it was "beyond doubt" Mr. Ames can prove no set of facts that would warrant the requested relief, stating, "The Court agrees with [the appellees] that merely because the Committee was conducting an organizational meeting pursuant to statute, the Committee was not thereby conducting a sovereign governmental function as might require the Committee to comply with certain statutory obligations under dicta set forth in *Jones v. Geauga Cnty. Republican Party Central Committee*, 82 N.E.3d 16 (11th Dist., Geauga)." The trial court subsequently filed a nunc pro tunc entry to correct a scrivener's error.

{¶9} Mr. Ames appealed and raises the following assignment of error:

{¶10} "The trial court erred by granting Defendants' Motion to Dismiss."

3

Case No. 2022-G-0038

## Standard of Review

{¶11} An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. A motion to dismiss for failure to state a claim is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In resolving a Civ.R. 12(B)(6) motion, courts are confined to the allegations in the complaint and cannot consider outside materials. *State ex rel. Baran v. Fuerst*, 55 Ohio St.3d 94, 97, 563 N.E.2d 713 (1990). In construing the complaint, a court must presume all factual allegations are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). However, a court should not accept as true any unsupported legal conclusions in the complaint. *See id.* at 193.

{¶12} A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt from the complaint the plaintiff can prove no set of facts entitling him to recovery. *Cleveland Elec. Illuminating Co. v. PUCO*, 76 Ohio St.3d 521, 524, 668 N.E.2d 889 (1996). If, after considering the complaint accordingly, there is no set of facts consistent with the appellant's allegations that would permit recovery, the judgment of dismissal will be affirmed. *Grybosky v. Ohio Civ. Rights Comm.*, 11th Dist. Ashtabula No. 2010-A-0047, 2011-Ohio-6843, ¶ 15.

## Legal Principles

{¶13} The determinative issue in this case is a legal one—whether the committee was acting as a "public body" that was subject to the OMA when it conducted an organizational meeting pursuant to R.C. 3517.04.

4

{¶14} The OMA provides "[a]ll *meetings* of any *public body* are declared to be public meetings open to the public at all times." (Emphasis added.) R.C. 121.22(C). The meaning of the term "public body" includes "[a]ny board, commission, committee, council, or similar decision-making body of a *state* agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any *county*, *township*, *municipal corporation*, *school district*, or other political subdivision or *local public* institution," as well as "[a]ny committee or subcommittee of a body described" above. (Emphasis added.) R.C. 121.22(B)(1)(a) and (b).

{¶15} The term "meeting" means "any prearranged discussion of the *public business* of the *public body* by a majority of its members." (Emphasis added.) R.C. 121.22(B)(2).

{¶16} The term "public business" is not statutorily defined. The Supreme Court of Ohio has defined it as "the business of the government," "matters within the purview of a public body's duties, functions and jurisdiction," and "those matters over which the public governmental body has supervision, control, jurisdiction or advisory power." (Citations omitted.) *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.3d 1234, ¶ 21.

{¶17} R.C. 3517.03 governs the committees of major political parties. It provides, in relevant part, "[t]he controlling committees of each major political party or organization shall be [1] a state central committee * * *; [2] a county central committee * * *; and [3] such district, city, township, or other committees as the rules of the party provide." It further provides "[e]ach major party controlling committee shall elect an executive committee * * *."

5

**{¶18}** R.C. 3517.04 governs the organization of central committees. It provides:

**{¶19}** "The members-elect of each major political party state central committee shall, except as otherwise provided in this section, meet following the declaration of the results by the boards of elections of the election of members of the state central committees, at a suitable place and time to be designated by the retiring chairman of the committee in accordance with party rules. In the case of a county central committee, the meeting shall be held not earlier than six nor later than fifteen days following the declaration of the results by the board of elections of the election of members of county central committees in that county. Notice of any meeting held pursuant to this section, giving the place and time, shall be sent to each member-elect by the retiring secretary of the committee by mail and a copy of the notice shall be posted in the office of the secretary of state or board of elections, as the case may be, at least five days prior to any such meeting. The meeting shall be called to order by the retiring chairman or secretary or if there is no such officer, or if such officer is absent, then by a member of such committee designated by the secretary of state in the case of the state committees, and by a member of the board of elections of the same political party, designated by the board, in the case of county committees. A temporary chairman and secretary shall be chosen and the committee shall proceed to organize by the election of a chairman, vice-chairman, treasurer, secretary, and such other officers as the rules provide."

**{¶20}** As we recently explained in *State ex rel. Ames v. Geauga Cty. Republican Cent. & Executive Commts.*, 11th Dist. Geauga No. 2021-G-0004, 2021-Ohio-2888, *appeal not accepted*, 165 Ohio St.3d 1457, 2021-Ohio-4033, 176 N.E.3d 769:

6

**{¶21}** "Courts have determined that political parties are not governmental entities. The Supreme Court of Ohio has characterized political parties as 'basically voluntary associations of persons who act together principally for party and community purposes.' *State ex rel. Cain v. Kay*, 38 Ohio St.2d 15, 18, 309 N.E.2d 860 (1974). As the Eighth District Court of Appeals has aptly explained, '[a]lthough political parties have certain public responsibilities, they are basically voluntary associations made up of persons who act together for various community and party purposes and who are governed in most respects by their own rules and usages.' *State ex rel. McCurdy v. DeMaioribus*, 9 Ohio App.2d 280, 281, 224 N.E.2d 353 (8th Dist.1967).

**{¶22}** "Since a political party is not a governmental entity, members of a political party's county central and executive committees are generally not considered public officials. *See McCurdy* at 281-282 ('[I]t is the general rule in the United States that party committeemen do not hold a 'public office'-although the Legislature may, by statute, regulate the election and conduct of political committees'); 2002 Ohio Atty.Gen.Ops. No. 2002-038, *2 ('[A]s a general rule, the members of these committees are not considered officers or employees of a governmental entity, but rather officers of the political party that elects or appoints them')." *Id.* at ¶ 36-37.

**{¶23}** In *State ex rel. Hayes v. Jennings*, 173 Ohio St. 370, 182 N.E.2d 546 (1962), the Supreme Court of Ohio recognized a limited exception to this general rule, holding:

**{¶24}** "The provisions of [R.C. 305.02] * * *, which authorize the members of the central committee of a political party to fill vacancies occurring, *inter alia*, in the office of clerk of courts of a county, confer official power upon the members of the central committee, and this annexation of power to this position makes it a public office and is a

7

constitutional grant of power by the General Assembly." *Id.* at paragraph one of the syllabus.

**{¶25}** In *Cain*, *supra*, the court clarified its holding in *Hayes*, stating "it was the delegation by statute of one of the sovereign functions of government, to be exercised for the public benefit, to the county central committeemen that outweighed the traditional reluctance of the court to interfere in the internal affairs of political parties. * * * [I]t is only where party officers assume duties affecting activities beyond the sphere of the internal affairs of the party and exercise official powers that are part of the sovereign functions of the state, properly exercisable for the public benefit, that the courts will intercede." *Id.* at 18-19.

**{¶26}** This court has twice considered whether the OMA applied to meetings of political party committees. In *Jones v. Geauga Cty. Republican Party Cent. Commt.*, 2017-Ohio-2930, 82 N.E.3d 16 (11th Dist.), we considered whether the OMA applied to a meeting at which the central committee voted to amend its internal bylaws and appoint new members. *See id.* at ¶ 3. We recognized that under the circumstances presented in *Hayes*, "R.C. 305.02 transmutes the members of a county central committee of a political party to 'public officers.'" *Id.* at ¶ 26. However, we determined "a central committee of a local political party is only comprised of 'public officers' when the committee is actually undertaking its limited, governmental duties." *Id.* at ¶ 28. We concluded "although members of a central committee of a political party are public officers upon acting under the authority granted in R.C. 305.02 in filling vacanc[ies] in county offices, these same committee members do not constitute public officials engaged in public meetings when they are addressing the internal affairs of the political party." *Id.* at

8

¶ 35; *see also* 1980 Ohio Atty.Gen.Ops. No. 80-083, paragraph five of the syllabus ("The convening of the county central committee for the purpose of conducting purely internal party affairs, unrelated to the committee's duties of making appointments to vacant public offices, is not a 'meeting' as defined by R.C. 121.22(B)(2)").

{¶27} Most recently, in *Ames I*, *supra*, we considered whether the OMA applied to the executive committee's meeting held pursuant to R.C. 3501.07 for the purpose of making and filing with the Ohio Secretary of State a recommendation for a Republican member of the county board of elections. *See id.* at ¶ 2. We determined, "[w]hile R.C. 3501.07 certainly gives the county executive committee an opportunity to provide meaningful input, the 'sovereign function of government,' i.e., the power of appointment, expressly lies with the secretary of state. Accordingly, R.C. 3501.07 does not make a county executive committee a 'public body' that is subject to the OMA." *Id.* at ¶ 73.

### Analysis

{¶28} Mr. Ames first contends the trial court erred by misapplying the Civ.R. 12(B)(6) standard, which required the court to presume the truth of all factual allegations in his amended complaint. He asserts the appellees' "conduct of the organizational meeting was required by R.C. 3517.04 and was therefore public business."

{¶29} Mr. Ames did not allege in his amended complaint that the committee was conducting "public business." In any event, "public business" is a legal term defined by the Supreme Court of Ohio. "[A] court should not accept as true any unsupported legal conclusions in the complaint." *Jones*, *supra*, at ¶ 12. Thus, the trial court did not misapply the applicable legal standard.

9

Case No. 2022-G-0038

{¶30} Mr. Ames next contends the trial court erred by relying on "dicta" in *Jones*. He contends this court in *Jones* did not find the central committee was not a "public body"; rather, we only found the committee was not "conducting official business at that meeting."

{¶31} Mr. Ames does not accurately characterize *Jones*. As stated, we concluded "although members of a central committee of a political party are *public officers* upon acting under the authority granted in R.C. 305.02 in filling vacanc[ies] in county offices, these same committee members do not constitute *public officials* engaged in *public meetings* when they are addressing the internal affairs of the political party." (Emphasis added.) *Id.* at ¶ 35. Stated differently, the central committee is only a public body when its members are acting pursuant to R.C. 305.02.

{¶32} Mr. Ames further contends the trial court's use of the phrase "sovereign governmental function" is "vague" and "unsuited" for this court's review. Mr. Ames used this exact phrase in his amended complaint and brief in opposition to the appellees' motion to dismiss. Further, the above precedent from the Supreme Court of Ohio and this court use and apply the nearly identical phrase "sovereign functions of government." Thus, the trial court's intended meaning is abundantly clear.

{¶33} In his opposition to the appellees' motion to dismiss, Mr. Ames argued the committee's organizational meeting held pursuant to R.C. 3517.04 must necessarily precede the performance of its appointment power under R.C. 305.02. Therefore, he argued, the committee's "organizational meeting" under R.C. 3517.04 is "essential to and inseparable from" its appointment power under R.C. 305.02.

{¶34} Mr. Ames cited no authority in support of this argument, and it is inconsistent with the existing binding legal precedent. Based on the authority of *Hayes* and *Jones*, the committee's election of officers pursuant to R.C. 3517.04 involved the internal affairs of the political party. Therefore, the committee's meeting was not subject to the OMA.

{¶35} Based on our de novo review of the allegations in Mr. Ames' complaint and the applicable law, we agree with the trial court that Mr. Ames can prove no set of facts entitling him to relief. Therefore, the trial court properly granted the appellees' motion to dismiss.

{¶36} Mr. Ames' sole assignment of error is without merit.

{¶37} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.


JOHN J. EKLUND, P.J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2022-G-0038